## JOHN BOSWELL v. STATE.

No. A-1312.   Opinion Filed September 30, 1912.

. (126 Pac. 826.)

1.   **CONTINUANCE—Application—Appeal and Error—Discretion of Trial Court.** (a) For an application for a continuance which is altogether insufficient, see statement of the case.

    (b)   For the necessary elements of an application for a continuance, see opinion.

    (c)   An application for a continuance is addressed to the discretion of the court, and this discretion will not be reviewed upon appeal, unless it appears from the entire record that the appellant was deprived of some material right, to his injury, by the action of the court in refusing to grant a continuance.

2.   **APPEAL—Instructions—Harmless Error.** (a) It is not error for the trial court to instruct the jury in a case of murder that where the commission of the homicide by the defendant is proven, the burden of proving circumstances of mitigation or that justify or excuse it devolves upon the defendant, unless the proof upon the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable, and that if the jury entertain a reasonable doubt of the defendant's guilt, upon a consideration of the entire evidence, they should acquit him.

    (b)   A defendant cannot complain of an error in the instructions of the court, which instruction is given at his request.

(Syllabus by the Court.)

*Appeal from District Court, Cherokee County;*
*John L. Pitchford, Judge.*

John Boswell was convicted of manslaughter in the first degree, and appeals.   Affirmed.

It is impossible to give a clear and detailed statement of the testimony in this case.   The difficulty in which the homicide was committed took place at a baseball game in Cherokee county. With the exception of Avis King, the witnesses who testified in the case were all more or less under the influence of intoxicating liquor when the difficulty took place, and their statements are confused.   The appellant himself testified that he had taken two drinks, and that the other participants in the difficulty were all

drunk. In fact, the testimony shows that a free fight and drunken row occurred, and it is impossible to tell how it started or what its cause was or who struck the first blow. In this difficulty the appellant and a number of other persons were severely beaten, and Ferdinand King received the wound from which he died. Ferdinand King was an old man about 75 years of age, and was nearly blind. Appellant testified that during the difficulty Ferdinand King struck him, the appellant, over the head with a stick. No other witness testified to anything of the kind. Five witnesses testified that they saw appellant seize a large rock, and throw it at the deceased, which struck him in the temple, and that the deceased immediately fell to the ground. The witnesses testified that deceased was standing by, and not taking any part in the difficulty. Appellant denied throwing this rock, but no one else sustains this statement. The wound made by the blow was on the right side of the head, and about an inch or inch and a half long. It had the appearance of being mashed down, so that the place where the wound was was lower than the other parts of his head. Deceased was unconscious from the time he received the blow. His head seemed to be mashed in. He laid in bed twelve days and died. Appellant, according to his own testimony, left the state of Oklahoma immediately after the difficulty, and fled to the state of Arkansas. He returned to the state of Oklahoma, as he says, as soon as he thought he could get justice.

When this case was called for trial on the 7th day of February, 1911, appellant filed the following motion for a continuance:

"Comes now the defendant, John Boswell, and moves the court for a continuance of this cause till the next term of this court, and on account of the absence of material evidence which he has not been able to obtain, and which he expects to obtain by that time, and said defendant on his oath says he has used due diligence to obtain said evidence and has been unable to do so; that he caused subpoenaes to be issued and served on witnesses who are absent, to wit, T. S. Williams and P. V. Woodruff, and that the testimony of said witnesses will be material, and that defendant believes by the next term of this court he can procure these witnesses, and that they will testify as follows: That they are physicians and were called on the 4th day of October,

1909, to attend and dress the wounds of the person of John Boswell, and which wounds consisted of a lacerated scalp wound, two or two and one-half inches long on the upper posterior part of the head, a fracture of the radius of the right arm near the wrist, a severe bruise on the top of the left shoulder near the shoulder articulation, an injury which probably fractured the bone and rendered the use of the left arm *nil* for some time, a minor bruise on the back; that B. F. Boswell had a stellated or three-cornered lacerated scalp wound on the top of the head, and some minor bruises on other parts of the body; that from the nature of the wounds there were probably clubs and stones used to produce them, and very considerable force used in the blows that inflicted the wounds. Affiant believes that said testimony will be given and that it is true. Affiant further believes that Ruth Meyers, if present, will testify that she was an eyewitness, and that at the time Ferdinand King received such injuries as he received, this affiant, defendant, was engaged in defending himself from an assault by John King and Ezra King, and was being badly handled, and was so engaged as to be unable to throw at any one; and affiant says that he has sent registered mail to witness last known place of residence, that the same has been forwarded as he is advised to Moody, Okla., and that he believes he will be able to get this witness by the next term of this court; that the testimony will be material, and that the same will be true as affiant verily believes; and affiant further says that he has caused a registered letter containing a subpoena to be sent to Earlsboro, Okla., and that the registered return card has not been returned, and that he is informed by the postmaster at Tahlequah, Okla., that on last Sunday the registered mail had been forwarded to Moody, Okla., passing through Tahlequah, Okla. Affiant further says that he caused Nancy McDaniels, of Welling, to be served with a subpoena, and that he paid her expenses to Tahlequah, Okla., and that she did not demand more fees than he paid her, and that she has failed to obey the said subpoena, and affiant says that, if this witness was present, she would testify, to wit, that Emma King told her on the 4th day of October, 1909, that she broke a baseball bat over the shoulder of John Boswell, affiant, and thought she had broken his shoulder all to pieces, and that John King said he begun the fight because he thought he was a better man than any of the Boswells; that Luke King and Em King said that they believed that they had already killed John Boswell, affiant; that they thought, if he was not already dead, he would die from the beating he got; that Luke and Em King both said they would get

John Boswell yet; they were going to kill him; that Ex. King said he did not know how Ferdinand King got hurt; that John Boswell hit him with a rock but he did not know who hit Ferdinand King. He believes the witness will swear to the matters as set out, and that the same is true, and that a continuance, if granted, he can, by the next term of this court, get the witness for the trial. [Signed] John Boswell, Defendant. Subscribed and sworn to before me this 7th day of February, 1911 [Signed] W. H. Talley, Clerk of the District Court."

The motion for a continuance was overruled by the court and defendant excepted. The case was postponed until the 13th day of February, and the trial was not concluded until the 14th day of February.

*Bruce L. Keenan,* for appellant.

*Chas. West,* Atty. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). The application for a continuance in this case is altogether insufficient. As to the two absent witnesses, T. S. Williams and P. V. Woodruff, the application does not show when the subpoena was issued, or when or by whom or how it was served upon these witnesses. Neither does it show the residence of the witnesses. The testimony set out in the motion for a continuance was in no manner material. If appellant killed the deceased, the fact that he was also injured would not constitute any defense unless the killing occurred while the appellant was attempting to defend himself against such injuries. As to the witness Ruth Myers, there is no statement that a subpoena was ever issued for or served upon her, and no showing is made as to any diligence on the part of appellant to locate this witness or discover her place of residence. It is not enough to state in general terms that a defendant has used due diligence, but the motion must go further, and state the facts which constitute the diligence used, so that the court may judge of this matter. It is an exceedingly serious and dangerous matter for a man to be charged with crime in the courts of Oklahoma, and it is the duty of such person and his attorneys to exert themselves to the utmost and avail themselves of the process of the court in order to obtain witnesses

in their behalf. The testimony of the absent witness was not material, because it was simply a statement of her opinion that the appellant was so engaged as to be unable to throw the stone which killed the deceased. An application for a continuance should state the facts which will be testified to, and not the opinion of the witness. The application does not state the residence of Nancy McDaniels, or state when or by whom or how process was served upon her, or at what time she was required by this process to appear in court. The testimony of said Nancy McDaniels is immaterial because it does not state any fact which would justify appellant in killing deceased. Even if the application had been good upon its face, it should have been refused because it was presented on the 7tth day of February, while the trial did not begin until the 13th day of February, which was ample time for appellant to send from one end of the state of Oklahoma to the other for his absent witnesses, and there is no showing that appellant attempted to get process for such witnesses or made any effort to secure their presence during this time. Even if the application had been good upon its face, and if appellant had exercised the utmost diligence to obtain the attendance of these witnesses, this conviction would not be reversed, because the entire testimony in the case shows the absent witnesses' testimony was immaterial and was at most only cumulative. It is the settled rule of this court that an application for a continuance is addressed to the discretion of the trial court, and that the refusal of the court to grant a continuance will not be reversible error upon appeal, unless upon an examination of the entire record it appears that appellant was deprived of some substantial right thereby, to his injury. An application for a continuance should state the name and place of residence of each absent witness. It should then allege that due diligence has been used to secure the attendance of said witness, and should disclose the diligence as to each witness by stating the time at which the subpoena was issued, and when and by whom served, and that the witness was summoned to be present at the time of the trial. The better practice is to attach the subpoena for each witness with the return thereon indorsed to the motion for

a continuance, and make it a part thereof, so that the court can tell whether or not as a matter of fact due diligence has been used. The motion should allege in general terms that the testimony of the absent witness is material and set out the facts expected to be proven by each absent witness, and it must also contain such statements as will show that such expected evidence is both competent and material. If the testimony of the absent witness cannot be procured from any other source, this fact should be stated. If it can be procured from some other source, the motion should contain a statement as to why it was not so obtained. But, if such absent testimony can be obtained from some other source, the motion must state the special facts which in reason and justice would entitle a defendant to a continuance in order to enable him to obtain cumulative evidence. A motion which does not comply with either of these requirements is bad upon its face.

Second. Upon the trial of this cause, among other things, the court instructed the jury as follows:

"You are instructed that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant inflicted the wound upon the deceased as charged in the information, and that said wound was the immediate and necessary cause of the death of the deceased, then the burden of proving circumstances of mitigation that jusitfy or excuse the homicide shall devolve upon the defendant, unless by the proof on the part of the state it is apparently and sufficiently manifest that the accused was justified or excused in committing the homicide."

The court also instructed the jury as follows:

"But, if, after viewing all of the evidence and circumstances in the case, there is a reasonable doubt upon your minds as to the guilt of the defendant of any charge mentioned in these instructions, then it would be your duty to give the benefit of that doubt to the defendant and acquit him."

We are at a loss to know why appellant should except to this instruction, because the record shows that he requested the court to charge as follows:

"You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant inflicted the wound upon the deceased as charged in the informa-

tion, and that said wound was the immediate and necessary cause of the death of the deceased, then the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the defendant, unless by the proof on the part of the state it is apparently and sufficiently manifest that the accused was justified or excused in committing the homicide."

Section 6854, Comp. Laws 1909, is as follows:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

The latter part of the instruction given and complained of does not follow the statute, and is more onerous than the law requires. But this does not constitute reversible error for two reasons: First, it is a substantial copy of the instruction requested by appellant and because a defendant cannot avail himself of an error which was committed by the court at his suggestion; and, second, because there is no word of evidence in this record either on the part of the state or appellant which in any manner tends to excuse, mitigate, or justify the offense committed, and it is a well-settled rule of law that an error in the instructions of the court will not be reversible unless it appears from the record that appellant was injured thereby.

From the whole record appellant is guilty of the offense for which he was convicted. Upon his own showing it was a case of manslaughter, and, while he was probably acting under such intense excitement as to render him incapable of forming that specific intent to kill which is necessary to constitute murder, he is clearly guilty of manslaugther in the first degree.

The other alleged errors in the record are not deemed of sufficient importance to require discussion. The judgment of the lower court is therefore in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.