# J. J. MARSHALL v. STATE.

No. A-2025.   Opinion Filed September 9, 1914.

(142 Pac. 1046.)

1.  **HOMICIDE—Appeal—Ground for Reversal.**   When a person is tried for murder and convicted of manslaughter in the second degree, and the proof clearly shows that a much lighter punishment was imposed than under the law and the facts should have been, this court will not reverse a conviction, in the absence of substantial error.

2.  **SAME—Deadly Assault—Justification—Trespass.**   A landowner is not justified in making an assault upon another with a dangerous or deadly weapon in resisting a trespass on his premises, when no felony is attempted.

3.  **SAME—Self-Defense.**   The law of self-defense is a rule of necessity, and can only be invoked in justification of a homicide, in order to prevent an actual or reasonably apparent commission of a felony against the person or property, and the necessity must be imminent at the time of the killing and not prior thereto.

(Syllabus by the Court.)

*Appeal from District Court, Tillman County;
Frank Mathews, Judge.*

J. J. Marshall was convicted of manslaughter, and appeals. Affirmed.

*J. E. Red* and *W. H. Hussey,* for plaintiff in error.

*C. J. Davenport,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J.   The plaintiff in error, J. J. Marshall, was tried at the January, 1913, term of the district court of Tillman county on a charge of murder and convicted of the included offense of manslaughter in the second degree.   His punishment was fixed at a fine of $1,000 and imprisonment in the county jail for a period of 90 days.

This was a most unfortunate and uncalled for homicide.   The deceased was a man 56 years old.   The accused is now about 77 years old.   It appears that in December, 1912, the deceased was working for the accused in Tillman county, Okla.; that on the

afternoon of the homicide they had been down in the pasture to drive up some small calves; that the deceased was directed to stand near a gate and permit no other stock, except the calves, to go into a certain lot. The accused apparently was driving the calves and other cattle toward this lot. Among the bunch was a bull. The accused, observing that the deceased was paying no attention to his business, in a loud voice directed him to head the bull and not let it go into the lot with the calves, but the deceased paid no attention to this admonition. The accused came on up to where deceased was standing, applied an epithet to him, and asked him why he did not head the bull, whereupon the deceased hit him over the head with a pitchfork. The accused went immediately to his residence, which was about 60 yards away, got a gun loaded with squirrel shot, came back to the lot, and ordered the deceased off the premises. The deceased made no effort to get away. After some few words deceased told the accused not to shoot him. The accused told deceased that he was not going to kill him, but just going to cripple him; that he could not beat him over the head with a pitchfork and stay on his premises. The accused testified that he told deceased to get off the premises; that instead of getting off the premises deceased was advancing toward him with the pitchfork in his hand; that there was wire fence between them, and that the accused was standing near a pump in the lot; that he took aim at deceased and shot him in the leg; that he did not intend to kill him; that he then turned around and went back to the house and put up the gun; that the deceased came up to the house, tried to get in, and was getting his clothes, when the wife of the accused told him to get away from the place, which he did.

This appeal is without a semblance of merit. Taking the most favorable view of the testimony, which would be the statement made by the accused on the witness stand, he was wholly without justification in the premises.

The sheriff, Frank Carter, testified that the accused told him, immediately after the shooting, that the transaction occurred about as follows:

"Q. What did he tell you about the matter of the shooting? A. Well, about as near as I can remember it, he told me that he and the deceased were trying to pen some cattle and calves, and that there was a bull in the bunch, and that he told the deceased to head the bull; that he let the bull go by and did not attempt to stop him; that he asked him why he did not stop the bull, and that deceased struck him with a pitchfork; that he went to the house and got a shotgun and came back and told the deceased he was going to shoot him; that he did not want to kill him, but that he was going to cripple him; that he then shot him in the leg."

The actions of the accused, as outlined by his own testimony, indicate extreme deliberation and no justification whatever.

The only question argued to any extent by counsel for plaintiff in error is based on an assignment alleging error because the court refused to give certain requested instructions. This request appears in the record as defendant's special instructions Nos. 4 and 5, and are as follows:

"No. 4. You are instructed that every person has the right to act in his own necessary self-defense, and where a person is in a place where he has a right to be, and is not the aggressor in bringing on the conflict, and is assaulted by another person in such a way as to place him in danger of death or great bodily harm, the person thus assaulted is not bound to retreat, but, on the contrary, may stand his ground and repel the danger in which he is placed with such force as will repel the attack and protect his person from serious bodily harm.

"Refused because given in substance in general instructions.

"FRANK MATHEWS, Judge.

"No. 5. You are instructed that homicide is justifiable when committed by a person, in the lawful defense of such person, or of his or her husband, wife, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and imminent danger of such design being accomplished.

"Refused because given in substance in the general instructions.

"FRANK MATHEWS, Judge."

Counsel contend that the defense interposed was that the homicide was committed by the accused in the lawful defense of his person, that of his wife, and that of his home. The issue of self-defense, defense of wife or home, is not raised by the testimony in the record. It is true that the deceased had struck the accused over the head with a pitchfork, which evidently provoked him, but this was not the occasion upon which the shooting occurred, and was not given by the accused as an excuse for the shooting. He walked away to his residence, procured his gun, came back and ordered the deceased off the premises, and then shot him, telling him at the time that he did not intend to kill him. His own testimony was that there was no real or apparent danger of the deceased inflicting upon him any great bodily injury at the time. The wife of the accused was nowhere around, and was at no time engaged in the controversy. The deceased was doing no injury to the property of the accused, and was not invading his premises as a trespasser, and, even if he had been, under the facts there would have been no justification for the shooting. The deceased lived with the accused, was on the premises by right, had his clothing in the house, and, when the accused ordered him away from the premises, he had a right to procure his belongings and leave the premises without being shot, so long as he did no act of violence and did not attempt to perpetrate any felony. The deceased had no weapon other than a pitchfork which he had picked up down in the field, and was, according to the accused's own testimony, several feet away, with a fence separating them.

Counsel attempt to invoke the doctrine announced by this court in the case of *Collegenia v. State*, 9 Okla. Cr. 425, 132 Pac. 375, but the facts in the Collegenia case and the facts in the case at bar are entirely divergent. In the Collegenia case the deceased and those associated with him had already discharged firearms into the home of Collegenia and were thoroughly in the wrong. In that case, however, we say:

"It is true that the authorities agree that the taking of life in defense of one's person, habitation, or property cannot be

justified except upon the ground of necessity, actual or apparent, to prevent the commission of a felony on either, and that such necessity must be imminent at the time; and they also agree that no man can avail himself of such necessity if he brings it upon himself."

Counsel seem to have tried this case and briefed it upon the theory that this accused had a right to resort to any force or any act he might desire to compel the deceased to leave the premises, even though no actual demonstration on the part of the deceased required the use of deadly weapons. Such is not the law.

In *Dickinson v. State,* 3 Okla. Cr. 151, 104 Pac. 923, this court said:

"A mere trespass upon the land of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner to use a dangerous or deadly weapon to resist the trespass, so if one offers to strike with a deadly weapon, although he announces his purpose not to finish the act and commit the homicide, if his terms are instantly complied with (although the terms be such as he has a right to exact and enforce by the rule of *moliter manus imposit*), he is guilty of an assault. The putting in use of a deadly weapon shows a wanton disregard of human life. Clark in his work on Criminal Law, at page 145, lays down the proposition in this terse and explicit language: 'A person may resist a trespass on his property, real or personal, not amounting to a felony, or removal or destruction of property not feloniously attempted, by the use of any reasonable force, short of taking or endangering life; but if he is unable to prevent it, and there is no felony attempted, he must suffer the trespass and the loss of property, and seek redress at the hands of the law, rather than commit homicide.' "

The rulings of the trial court and the instructions given were eminently fair to the accused, and he received more mercy than he was entitled to at the hands of the jury. The verdict would not have been disturbed by this court had a punishment of ten years' imprisonment been imposed, and, in all probability,

a conviction of murder would not have been unlawful under the statute.

There is no error in the record sufficient to justify a reversal of the judgment. It is therefore in all things affirmed.

DOYLE, J., concurs. FURMAN, J., absent on account of illness.