## O. L. LACY v. STATE.

No. A-4315. Opinion Filed May 7, 1925.
(236 Pac. 53.)

(Syllabus.)

1. **Trial—Requested Instruction not Applicable to Evidence.** An instruction requested by a defendant which is not applicable to the evidence is properly refused.

2. **Trial—Requested Instruction Covered in General Charge.** It is not error for the trial court to refuse to give a requested instruction, although it may be a correct statement of the law, if the principle stated in such requested instruction is given in the general charge of the court.

3. **Trial—Sufficiency of Instructions as a Whole.** Where the instructions as a whole taken and considered together embrace the law of the case, though one or more of them may be technically erroneous, such error will not be ground for a reversal unless

it appear from the entire record that some prejudice to the substantial rights of the defendant resulted.

4.    **Same.**    For instructions held to be technically erroneous, yet not 'sufficient to cause a reversal under the record, see opinion.

Appeal from District Court, Seminole County; John L. Coffman, Judge.

O. L. Lacy was convicted of manslaughter in the first degree, and appeals. Affirmed.

See, also, 20 Okla. Cr. 440, 203 P. 1050.

Pryor & Stokes and T. O. Criswell, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

EDWARDS, J.   An information was filed against the defendant in the district court of Seminole county charging him with the crime of murder.   He was convicted of manslaughter in the first degree and sentenced to a term of 30 years in the penitentiary.   From the record the following facts appear:   On the 22d day of December, 1922, plaintiff in error shot and killed Richard Romine.   The shooting took place on the farm of Lacy, in the field where he was at work.   There were no eye-witnesses other than the parties and the wife of plaintiff in error, who claims to have seen it from a long distance.   Six shots were fired by plaintiff in error; five entered the body and one the arm of the deceased.   The physician who testified as to the cause of death testified that none of them entered from the front part of the deceased's body.   One of the wounds was near the center of the back.   After the shooting, plaintiff in error telephoned for a doctor and for the officers.   The deceased died before any one reached the premises, and there was no dying declaration.   The plaintiff in error claims that he acted in self-defense, and that at the time of the shooting the deceased was attacking him with an open knife.   A closed pocket knife was found in

the. pocket of the deceased. There was a considerable conflict in the testimony of the plaintiff in error and his wife and some proof of contradictory statements of the circumstances made by the plaintiff in error to the officers.

The contentions are as follows: First. Error of the court in overruling plaintiff in error's application for a continuance. Second. That the verdict is not supported by the evidence. Third. Error of the court in refusing to give requested instructions. Fourth. Error of the court in his instructions to the jury. These assignments will be considered in the order presented. The application for a continuance was based on the absence of the witness Fred Davis, who was an attorney, and for whom a subpœna was issued. He was absent at the time at Ardmore on business. The subpœna is not attached to the motion for a continuance, and we are not able to tell when it was issued or whether served or not, or what diligence was. used to procure his attendance. Bryan v. State, 5 Okla. Cr. 542, 115 P. 619. The oral evidence on the application shows that a few days prior to the beginning of the trial the witness Davis from Ardmore, called one of the attorneys for plaintiff in error and informed him that he was busy and could not be at the trial. This was in ample time to have procured his presence by attachment, and some conversation took place between the trial judge and counsel for plaintiff in error in reference to an attachment in which the judge stated:

"What I really said to counsel, we were discussing the question of an attachment for Mr. Davis, and there was some hesitancy about asking for an attachment on the ground that he was an attorney, and they hated to ask that. The court stated to counsel that, if it was necessary to issue an attachment for Mr. Davis, the court would call him, and the court thought that on account of the personal acquaintance with Mr. Davis that he would come at the request of the court instead of waiting for the attachment."

The case was set for the 9th of February, but did not go to trial until the 11th. The attendance of Davis could have been had by plaintiff in error if they had seen fit to invoke the processes of the court. It appears, too, that, had Davis been present, what was sought to be shown by him was a privileged communication between attorney and client. There was no abuse of discretion in overruling the application for a continuance.

The second assignment, that the verdict is unsupported by the evidence, is not tenable. The fact of the killing, the location of the wounds on the body of the deceased, the deceased being unarmed at the time of his death, and various other matters in evidence abundantly support the verdict.

The third assignment argued is error of the court in refusing to give requested instructions. Request No. 1 is on the right of self-defense and the right of a person to repel a trespasser from his premises. While the request apparently states a correct proposition of law, its substance so far as applicable is covered by the general charge of the court. Request No. 2 is to the effect that the circumstances attending the killing shall be viewed from the standpoint of the defendant. This is directly covered by the court's instruction.

Request No. 3 is in substance that a defendant is not required to gauge the danger with nicety in order that he may use no more force than is necessary in repelling an attack. This is covered in substance by the court's charge on self-defense.

Request No. 4 is to the effect that danger in order to entitle a person attacked to the right of self-defense need not be real but only apparent. In instruction No. 7 the jury are expressly told:

"It is your duty to view the circumstances surrounding the killing from the defendant's own standpoint, and

it is not necessary that the danger was real, but, if the circumstances were of such nature as to give him reason to believe that he was in such danger * * * then it would be your duty to give him the benefit of such doubt and acquit him."

Request No. 5 is a charge on the right of the owner of premises to expel a trespasser by use of all force necessary. If this instruction were proper under the evidence and the theory of the defendant, it is not complete, as the law does not warrant an owner of premises to kill a trespasser who is not attempting to commit any felony. Dickinson v. State, 3 Okla. Cr. 151, 104 P. 923; Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375; Marshall v. State, 11 Okla. Cr. 52, 142 P. 1046.

But there is no contention that the plaintiff in error was attempting to expel the deceased from his premises at the time of the killing, and the requested instruction, even if correct, was inapplicable.

The last assignment is predicated on the language of the court in three of the instructions given wherein the trial judge said:

"But, if you have a reasonable doubt existing in your minds engendered by the evidence in this case, * * * then you will return a verdict of not guilty."

In several other instructions, where the term "reasonable doubt" appears, the phrase "engendered by the evidence" is not used. It is argued that the words "engendered by the evidence" place the burden on the plaintiff in error to raise a reasonable doubt from the evidence, and does not leave the jury free to entertain a reasonable doubt from a want of evidence. All that is necessary to warrant an acquittal in a criminal case is that the evidence or the want of evidence as a whole shall leave in the minds of the jury a reasonable doubt of the guilt of the accused. Carter v. State, 12 Okla. Cr. 164, 152 P. 1132; Harris v. State, 10 Okla. Cr. 417, 137 P. 365, 139 P. 846.

The word "engender" means to cause, to bring about, to excite, to occasion, to call forth. A reasonable doubt, then, may be called into being, brought about, occasioned, or excited by the evidence; by a mere paucity of the evidence; or by a want of evidence. Upon a consideration of the evidence in the case a jury might entertain a reasonable doubt from the affirmative nature of the evidence itself. It might entertain a reasonable doubt from the insufficiency of the evidence to establish a necessary fact. It might entertain a reasonable doubt from a want of evidence to establish an essential fact. In any of such cases may not the reasonable doubt be said to be engendered by the evidence? Somewhat analogous is the reasoning of Richardson, Judge, in the case of Moore et al. v. State, 4 Okla. Cr. 212, 111 P. 822, wherein this language was used:

"Plaintiffs in error complain of that portion of the above instruction wherein the court said: 'A doubt to justify an acquittal must be reasonable and arise from a candid and impartial consideration of all the evidence in the case.' The contention is that a doubt might arise from a lack of evidence, and that this portion of the instruction precludes that. We think the objection not well taken. A reasonable doubt might well arise from a candid and impartial consideration of all the evidence in the case, because the jury thought that all the evidence thus candidly and impartially considered was not sufficient to establish the defendant's guilt beyond a reasonable doubt; that it was wanting in quality or in quantity; in other words, that there was a lack of convincing evidence. And if in fact such a lack of evidence existed, that fact could be ascertained only by a candid and impartial consideration of all the evidence that had been given."

The converse was discussed in the case of Cohn v. State, 4 Okla. Cr. 494, 113 P. 217, where an instruction was given using these words:

"Or, if the circumstances are sufficiently strong as to lead you to believe beyond a reasonable doubt that the de-

fendant did commit the crime, * * * then it is your duty to convict."

It was there argued that the jury were not limited to the evidence, but were permitted to take into consideration circumstances not in evidence. This court in that case disapproved the language quoted, but concluded that only such circumstances as were proved were by that instruction submitted to the jury.

Fine points of distinction in the use of language is not to be drawn in construing an instruction. It should be read and considered in the light of experience and common sense, and, where it is evident that a technical inaccuracy did not mislead the jury, or where a choice of words may not as a matter of rhetoric be free from criticism, yet when on the whole the language of the instructions could not have misled the jury, such inaccuracy will not be ground for reversal. Ostendorf v. State, 8 Okla. Cr. 363, 128 P. 143; Thompson v. State, 6 Okla. Cr. 51, 117 P. 216; Killough v. State, 6 Okla. Cr. 312, 118 P. 620; Boswell v. State, 8 Okla. Cr. 152, 126 P. 826.

Considering the instructions as a whole, in the light of the testimony in the case there is no error shown which deprived the plaintiff in error of any substantial right.

Finding no reversible error, the case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.