# WELLINGTON BRUNER v. STATE.

No. A-4430.  Opinion Filed May 23, 1925.
Rehearing Denied Sept. 19, 1925.
(238 Pac. 1000.)

Norvell & Haulsee, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

EDWARDS, J.  For brevity, the plaintiff in error will be referred to as defendant.

Both the defendant and deceased are negroes, and were brothers-in-law. Defendant was 26 years old and a veteran of the World War. The deceased was 48 years old. Some slight misunderstanding had arisen between them, but, so far as the record discloses there had never been any quarrel or dissension of any kind. On Sunday, April 2, 1921, defendant went on horseback to the town of Seminole, and on his way went by the house of deceased. Their relations appeared amicable. Defendant claimed to be going to the house of a relative to get some medicine. He hitched his horse at Seminole, went to the house of Will Ellis, left his pistol, and was about town until about 3:20, when the homicide occurred. The deceased went to the town of Seminole in an automobile which he parked near a hotel for colored, and not far from where the horse of the defendant was hitched. It appears he had an engagement to meet Tecumseh Bruner at Seminole, and was in his car most of the time. About 3 o'clock, or a little later, defendant got his pistol, and going toward his horse passed the car of deceased, who was talking to relatives of defendant. They spoke to each other, apparently friendly, and immediately defendant drew his pistol and shot deceased through the head, who fell out of the car and staggered a short distance where he sank down, and died. He had a pistol tied in the pockets of a pair of trousers under his overalls. After the shooting, defendant came around the car and pointed the gun at deceased, but a bystander prevented him from shooting again. He then went to his horse, mounted, and a deputy sheriff called for his surrender. On his defiance, the officer fired at him, and defendant fired four or five shots as he rode away. He went to the house of a relative a few miles away, who took him in a car and went in the direction of Wewoka, where he was met by officers and taken into custody.

The defendant claims that he acted in his self-defense, and that at the time he shot the deceased made a motion

which led him to believe he was about to draw a pistol. He explains his resistance to the officers immediately following the homicide by saying that he did not know they were officers.

The assignments of error argued in the brief may be stated about as follows: First, insufficiency of the evidence; second, errors of law occurring at the trial in the admitting of incompetent evidence and the exclusion of competent evidence offered by defendant; third, error of the court in refusing requested instructions by defendant and in the giving of instructions prejudicial to the defendant. These various assignments will be considered in the order presented.

Upon the first assignment, i. e., the insufficiency of the evidence, defendant's counsel present the theory that there was ill feeling between the parties and threats made by 'eceased, and that, as the defendant passed to the rear of the car, the deceased made some movement of his shoulder which led the defendant to believe that he was about to draw a gun, and that the shot was fired in self-defense. The witnesses for the state, who were at or near the scene of the killing, coincide fairly closely in their account of the shooting. None of them testify that the deceased made any act whatever, and all appeared to be relatives or friends of defendant. There seems to be no substantial basis in the evidence to support the statement of defendant that the deceased made any movement whatever. The evidence was for the jury, and under it we fail to see how they could have returned a different verdict.

Upon the second assignment of error, i. e., the admitting of improper and the excluding of proper evidence, several contentions are grouped. The complaint is first made that the state introduced evidence that the deceased had two girls by a former marriage, one in college in Tennessee, and another teaching in the Lima high school. There is

perhaps some slight reason for the admission of this evidence to account for the absence of the daughters of deceased from home on the Sunday morning when defendant was at the house of deceased. Defendant contends that it was a direct and unfavorable comparison between the family of deceased and the defendant. The evidence is really immaterial and serves no purpose. It merely calls to the attention of the jury the family of deceased, and might to that extent be said to create a feeling unfavorable to the defendant. But on the other hand the defendant testified that he had a wife and one child and was a veteran of the World War, which called the attention of the jury to matters foreign to the issue, and which might create a sympathy for him. This is a part of the old byplay which has been practiced since the memory of man runneth not to the contrary, where, in the trial of criminal cases, the wife, children, or old parents are brought in and arrayed on different sides of the counsel table for emotional purposes. In this case as in most cases, it is played by counsel for both sides. We do not commend these methods, but there was nothing in the proceedings here which could be reasonably calculated to arouse the passion of the jury or in any manner prevent the defendant from having a fair and impartial trial. Further under this assignment it is contended that the court erred in excluding the evidence offered by defendant, by the witness Millie Sango, of a conversation between the deceased and his wife on the morning of the shooting. There is nothing in this contention. The witness did testify:

"Q. Did you hear Douglas Hamilton (the deceased) say anything that morning about Wellington Bruner (the defendant)? A. No, sir. Q. Didn't hear him say anything at all? A. No, sir."

To further questions the court sustained objections, which was no error.

Complaint is made that the court excluded testimony

of the witness Tecumseh Bruner, a half-brother of defendant, that he had no arrangements to meet the deceased at Seminole on the day of the killing. This evidence should have been admitted. There had been some evidence that the deceased was at Seminole to meet Tecumseh, as explaining why he was in his car at the time of the shooting. However, it is not shown that the defendant had any knowledge why the deceased had come to Seminole, or that he had any reason to believe that he was there for the purpose of precipitating a difficulty with the defendant, and hence deceased's purpose would not affect the defendant's right of self-defense in any particular. If it were shown that any knowledge or reason to suspect the purpose of deceased in coming to Seminole was to make an opportunity for a difficulty, and this was known to the defendant, the exclusion of this evidence would be material. Under the record it is of no special importance.

Upon the third assignment, i. e., error of the court in refusing requested instruction and giving of erroneous instructions, the first contention is upon defendant's request No. 13, to the effect that, if a state of ill feeling existed in the mind of the deceased toward the defendant and known to the defendant at the time, the jury might take this into consideration in explanation of the act of shooting and in determining whether or not defendant acted in self-defense. This is not a correct statement of the law. The most that the evidence shows, and that from the defendant alone, was that there was some misunderstanding between defendant and deceased. No claim is made by defendant that there had ever been any quarrel, but defendant did testify that his brother or half-brother had told him of some statement made by deceased which indicated ill feeling. The fact that deceased had an ill feeling toward the defendant, and the defendant knew this, if it had been shown, would not justify or mitigate his act of shooting the deceased. Now if the deceased were a dangerous man, which is nowhere contended, and the defendant had

any reason to fear him, he might act on a less significant overt act than under other conditions, but in neither case would a mere ill feeling excuse the homicide. Justification could come only from some overt act which would lead the defendant, as a reasonable person, under the circumstances, to apprehend that his life was in danger, or apparent danger, or that he was in danger of suffering some great bodily injury at the hands of deceased.

The next contention is that the court erred in instruction No. 8, with reference to the departure of the defendant from the place of the homicide, and to the effect that, if the jury found beyond a reasonable doubt that the defendant "ran away" from the scene after firing the fatal shot, it might be considered as a circumstance tending to show guilt; it being argued that in order to constitute flight it is necessary that there be a subsequent hiding-out, evasion, or concealment, or the leaving of the community for parts unknown, citing 16 C. J. 552, and Terry v. State, 13 Ala. App. 115, 69 So. 370, and it being further argued that the evidence showed that the defendant did not intend to leave the community, but merely withdrew for the purpose of surrendering to the proper authorities. The instruction, however, does not assume that the defendant fled, but submits that to the jury as a question of fact. If the leaving of the scene of the homicide, under the circumstances detailed in the evidence, was a flight, it is admissible as tending to establish the guilt of the defendant. If, on the other hand, the explanation of the defendant was satisfactory to the jury, it would have no significance. Pittman v. State, 8 Okla. Cr. 58, 126 P. 696; Robinson v. State, 8 Okla. Cr. 667, 130 P. 121; 1 Wigmore on Ev. § 276.

The next contention is that the court erred in refusing defendant's request for an instruction on the presumption of innocence. The court gave an instruction on the presumption of innocence to the effect that defendant was presumed innocent and of good character, and that the pre-

sumption stands as a witness in his favor until overcome by competent testimony, which instruction defendant admits is correct so far as it goes, and to that extent is substantially in the form of the request. The request continues:

"* * * Until it is overcome by legal evidence which establishes his guilt to the satisfaction of your minds beyond a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."

The instruction given is technically incorrect. In various other of the court's instructions the jury are repeatedly told that the guilt must be established beyond a reasonable doubt, and are told, if they have a reasonable doubt, they must acquit the defendant. The instruction is poorly drawn, but does not present substantial error.

The next contention is that the court did not give a sufficient instruction on good reputation of defendant. The jury are told that the defendant has offered testimony in support of his good reputation, and that this may be taken into consideration in determining whether or not the defendant might be likely to commit the crime charged against him. This was not excepted to, but the defendant made the further request that good reputation should also be considered along with the other evidence in the case to determine whether the witnesses who had testified were mistaken or had testified falsely or untruthfully, and added the further clause that, if the jury entertained a reasonable doubt of the defendant's guilt, they should acquit him, or, if they believed him guilty beyond a reasonable doubt, they should convict him. The latter part of the instruction is covered by the court's charges, and its incorporation here is a repetition. A general charge on the matter of character is proper, and this court has adopted the rule announced in White v. U. S., 164 U. S. 100, 17 S. Ct. 39, 41 L. Ed. 365, where it is said:

"When the court told the jury it was admitted that

the defendant was a man of good character, and that the jury might consider such good character and give such weight to it as they saw proper under all the evidence in the case, and that the defendant was entitled to a reasonable doubt, it was sufficient."

See Morris v. Ter., 1 Okla. Cr. 617, 99 P. 760, 101 P. 111; Cannon v. Ter., 1 Okla. Cr. 600, 99 P. 622; Holmes v. State, 6 Okla. Cr. 541, 119 P. 430, 120 P. 300; Wilson v. State, 3 Okla. Cr. 714, 109 P. 289.

In the Wilson Case, supra, the court said:

"On principle it would seem that the very fact that the court admits the evidence as to the defendant's good character could not but be understood by the jury as a command to consider it."

Wherever it is proper to give the instruction on reputation, it should conclude by informing the jury that, if they find beyond a reasonable doubt that the defendant is guilty as charged, then his previous good reputation would be no justification or defense. Bishop's New Criminal Procedure, § 1116. The request in the Cannon Case, supra, which was by the court denied, is substantially the same as the request in this case.

The next contention is that the court erred in instruction No. 6, which is a general charge on self-defense, and particular complaint is made to the language that, if the jury had a reasonable doubt existing in their minds, "engendered by the evidence," then it would be their duty to acquit. The use of the phrase "engendered by the evidence," it is argued, requires that the evidence alone shall raise a reasonable doubt, and places a burden on the defendant. This court recently had occasion to criticise the term "engendered by the evidence" in the case of Lacy v. State, 30 Okla. Cr. 273, 236 P. 53, but held such expression did not constitute reversible error.

The next contention is that the court erred in instruc-

tion No. 11 in stating the things necessary to be proven in order to establish the offense, and in refusing to give defendant's request that they must find beyond a reasonable doubt every fact and circumstance essential to the guilt of the defendant. There is some weight to the argument if instruction No. 11 is singled out, but the instructions must be considered as a whole. They are not models by any means, but, when considered all together, fairly submit the law.

Other matters are presented by the brief, and all have had our attention. The record has been carefully read. There is no such error shown as would warrant a reversal.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.