Brazzyer **PADILLOW**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16375.**

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

Frank R. Hickman, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

Brazzyer Padillow, appellant, hereinafter referred to as the defendant, was charged with the crime of Murder in the District Court of Tulsa County. He was represented by counsel and received a jury trial. The jury found him guilty as charged and returned a verdict assessing the sentence of death in the electric chair. From said judgment and sentence this case is now on appeal. The judgment herein is affirmed, but sentence is modified to life imprisonment.

The facts reveal: On July 30, 1970, defendant went to the apartment of Vergia Robinson, armed with a pistol. Mary Frances Hearns, the deceased, was separated from her husband, Ira Hearns, and had been living with Vergia Robinson. During that separation defendant had been dating Mary Frances Hearns. Beside Vergia Robinson and Mary Frances Hearns, Clint Cox and John Pittman were at Vergia's apartment playing cards in the kitchen when defendant arrived. Clint Cox was Mary Frances Hearns' brother. Defendant knocked at the door, was invited inside and sat on the sofa. Mary Frances went into the living room to discuss her relationship with the defendant, as well as certain accusations he had made concerning her husband. Shortly thereafter Ira Hearns arrived, and a discussion ensued. Mary Frances went back into the kitchen to get a light for her cigarette, leaving defendant and her husband in the living room; she later returned to the living room, standing near the kitchen door.

Defendant and Ira Hearns became involved in a heated discussion concerning certain alleged accusations defendant had made about him. During that discussion Mary Frances Hearns returned to the living room. Mr. Hearns told the defendant he didn't want him threatening Mary Frances with a gun anymore, which defendant denied doing. Mr. Hearns turned to his wife, Mary Frances, and said: "Well, Mary Frances, do you want him?" and she replied: "No, I've already told him." Mr. Hearns then said to defendant: "Well, man, the best thing for you to do is to go and leave. You see she don't want you any more." Defendant replied: "Okay, man, well, I'll leave." The testimony showed that Mr. Hearns reached out his hand and said: "Man, we can still be friends." But defendant replied: "I don't want to be your friend. I'm fixing to leave now." According to the testimony of Pittman, defendant walked to the screen door, turned around and said something to Mr. Hearns like: "You think you are bad. I ought to shoot you. I ought to shoot both of you." At this point he commenced firing his pistol. Mr. Hearns grabbed at defendant and followed him out the door; Mary Frances Hearns fell on her face through the living room door into the kitchen, saying: "Verg, I'm shot." Clint Cox obtained a pistol from one of the dresser drawers in Vergia Robinson's

apartment and pursued the defendant. Mary Frances Hearns died and her husband, Ira Hearns, was wounded. Defendant was apprehended by the police the next day.

The pathologist, Dr. Robert M. Fogel, testified that Mary Frances Hearns was shot three times, once in the chest, in the back of the forearm, and near the wrist; and that the cause of her death was extensive hemorrhage within both lungs and within the heart, caused by the bullet which entered her chest.

The other witnesses at Vergia Robinson's apartment testified to substantially the same facts. Testimony of other witnesses was offered concerning defendant's apprehension the following morning and the resulting investigation, which is not necessary to repeat herein.

Defendant testified in his own behalf and related that he acted in self-defense after Mr. Hearns jumped up, started for him, and "made a run at his [Hearns'] pocket." He denied pulling a gun on Mr. Hearns and said he was afraid of what Hearns would do to him, which caused him to pull the gun and shoot. He admitted having the weapon on his person, but related that he purchased it after Clint Cox held a gun on him and two other persons assaulted him outside Vergia Robinson's apartment about July 20th, prior to the killing incident. He denied ever threatening Mary Frances Hearns and said he did not fire his weapon until after he left the house; that he had no idea how she was shot. He testified that Hearns followed him out the door with a .22 caliber pistol.

Ira Hearns, Clint Cox and Vergia Robinson were called as rebuttal witnesses. Hearns denied that he had a gun on the night in question; and Clint Cox explained the occasion when he confronted the defendant, which he asserted occurred some two months earlier; and resulted because defendant had earlier confronted his sister, Mary Frances Hearns, with a gun, once at the ball park and again at the "Corner Bar." Vergia Robinson's testimony substantially corroborated that of Clint Cox concerning the confrontations between defendant and Clint Cox. Defendant then testified as a rebuttal witness to render his version of the confrontations between him and Clint Cox.

After the jury was instructed, a verdict was returned finding defendant guilty of the crime of murder, and assessing his punishment at death by electrocution, from which this appeal was lodged.

■ Defendant's first proposition in his brief asserts the jury was qualified for the death penalty in violation of the United States Supreme Court's decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. Defendant's proposition offers a close question concerning the trial court's general question propounded to the jurors, but in view of the Honorable United States Supreme Court decision in Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346, 1972, this question becomes moot and we will therefore not discuss it further.

Defendant's second proposition asserts that error was committed when the trial court permitted the prosecution to go into collateral matters not brought out during direct examination of defendant, and that the rebuttal testimony was not properly admitted. Defendant cites the rebuttal testimony of Ira Hearns, Clint Cox and Vergia Robinson, and contends that the method of impeachment of defendant's testimony was improperly accomplished by these witnesses.

■ On direct examination defendant was asked why he bought the pistol. The prosecutor's objection was overruled and defendant was permitted to explain that about a month prior to July 30th, when this tragedy occurred, Clint Cox held a .25 automatic on him and two other men beat him up in front of Vergia's apartment. This series of questions and answers opened the door for the prosecution to inquire of the witnesses concerning that incident and others related to it, in order to show defendant's attitude and actions to-

ward the deceased woman. The trial court ruled at one time, "All the circumstances surrounding this incident would be a proper part of the subject of inquiry on cross-examination."

■■ It is true that the State was permitted to repeatedly inquire of defendant concerning his disposal of the pistol the day following the killing, which was clearly argumentative and defendant's objections should have been sustained. However, that error is not sufficient to reverse this conviction. The other complaints under this proposition relate to the explanation defendant gave as his reason for purchasing the weapon, after Clint Cox allegedly held the pistol on him while two other men beat him up. The rebuttal explanations were permitted to show that defendant had a pistol in his possession both times; and those explanations given, relating to defendant's earlier threats to the deceased woman, were permitted to show that defendant had threatened the deceased woman, as well as to rebut his direct testimony when he denied ever pointing a gun at the deceased woman. "If threats were made by the plaintiff in error [appellant] against the deceased shortly before the tragedy, evidence of such threats was properly submitted to the jury, for the purpose of determining the state of mind and the feelings of plaintiff in error [appellant] toward the deceased at the time of the homicide." Mayberry v. State, 94 Okl.Cr. 301, 238 P.2d 362, at 367 (1951). It is clearly within the discretion of the trial court how much latitude will be allowed for such rebuttal; and unless it clearly appears that such discretion is abused, this Court will not reverse the trial court decision. See Green v. State, Okl. Cr., 319 P.2d 321, wherein proof of antecedent menaces, assaults and quarrels between the defendant and the deceased was admitted as not being too remote to establish motive and intent.

■ Defendant's contention that collateral matter was introduced when the prosecutor inquired concerning defendant's former convictions. This contention is without merit. "In cross-examination of accused concerning other convictions for crime for the purpose of affecting his credibility as a witness, the conviction, the name of the court in which the conviction occurred, the nature of the crime, and the date the conviction was sustained are all pertinent, but trial court should not allow cross-examination into the details of the various crimes in which the convictions were sustained." Stacey v. State, 79 Okl. Cr. 417, 155 P.2d 736 (1945). We therefore deny defendant's second proposition.

■ Defendant's third proposition asserts that he was denied his constitutional right to due process because of inadequate counsel. We do not accept this contention as being supported. While defense counsel may not be as skilled in the field of criminal law as some, there is nothing in this record to show that defendant was not properly represented by legal counsel, and that he did not receive a fair trial and due process of law; nor is there anything to reflect that counsel was in any way negligent. While he may not have entered as many objections during the progress of the trial, as some attorneys do, there is nothing contained in the record which reflects inadequacy of counsel. The eighth paragraph of the syllabus to Parks v. State, Okl.Cr., 457 P.2d 818, provides: "Where defense counsel was [a] duly licensed member of bar and [the] record did not show that counsel made proceedings against defendant [a] farce and mockery of justice, shocking to conscience of court, unsupported allegation of inadequate counsel was insufficient to support [a] charge of inadequate legal representation." We therefore find this proposition to be unsupported by the record before this Court, and deny this proposition. Defense counsel was, and is, a member in good standing of the Oklahoma Bar Association and enjoys an outstanding reputation as an attorney whose law practice is primarily in "civil litigation," but this does not signify his inadequacy in criminal matters.

■ Defendant's fourth proposition complains of the trial court's instruction 5A, covering the flight of defendant. The evidence revealed that defendant was leaving the house when he turned, fired his pistol, and ran. Instruction 5A was as follows:

> "You are instructed that evidence has been offered tending to show flight by the defendant shortly after the commission of the crime alleged against him in the information. If you find from the evidence that the defendant did at some time flee from the scene and that such flight was induced by his apprehension of being charged with a public offense by reason thereof, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of the guilt or innocence of the defendant."

Such an instruction on the flight of a defendant after the commission of a crime is not prejudicial, if supported by the evidence. This Court has held in many cases that evidence of flight is admissible, because it is a circumstance tending to show consciousness of guilt. This Court in Bruner v. State, 31 Okl.Cr. 351, 238 P. 1000 (1925) stated:

> "Flight of a defendant is a circumstance tending to prove guilt, and where the state offers evidence of the conduct of defendant tending to prove flight, and the defendant offers evidence in explanation of such conduct, it is proper to submit the question of flight to the jury as a matter of fact for their determination, and to instruct them that, if they find beyond a reasonable doubt that the defendant fled, it may be considered as a circumstance tending to prove guilt."

This Court in Lunsford v. State, 53 Okl.Cr. 305, 11 P.2d 539 (1932) stated:

> "The question of flight is one of fact and not of law, and, where the question is controverted, the court in its instructions should not assume that defendant fled, but, if any instruction upon the question of flight is given, it should be submitted to the jury as a question of fact."

Defendant asserts that because he remained in the vicinity, after the tragedy occurred, that fact should be sufficient to negate the instruction on flight. That was one of the facts before the jury, along with the other testimony concerning defendant's actions in the house, all of which the jury is presumed to have considered when arriving at a verdict. We therefore hold it was not reversible error in this case when the court gave instruction 5A.

■ We have reviewed the instructions given to the jury and find that they were sufficient; and after reviewing the record of trial, we conclude that defendant did receive a fair trial in accordance with due process of law; that the evidence submitted to the jury was sufficient to sustain the guilty verdict reached by the jury; and that the judgment of conviction should be affirmed and that the sentence imposed herein should be modified from the death penalty to life imprisonment.

It is so ordered.

BUSSEY, P. J., and SIMMS, J., concur.