CHEEK v. STATE.

Opinion delivered November 6, 1922.

1. HOMICIDE—INVITED ERROR.—Where defendant requested an instruction submitting the issue as to whether the State's principal witness was an accomplice, he cannot, on appeal, insist that the court erred in failing to instruct that the witness was an accomplice according to his own admissions.

2. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence corroborating an accomplice is sufficient if independently connecting defendant with the crime, though not sufficient of itself to support a conviction.

3. CRIMINAL LAW—SUFFICIENCY OF CORROBORATION OF ACCOMPLICE.
—In a prosecution for murder, evidence of discovery of a gun
and shells, the position of the body, the location of the wound,
the circumstance of meeting two men in the road shortly after
the killing, and a certain insurance transaction *held* to corrobo-
rate the testimony of the accomplice.

4. CRIMINAL LAW—EXCLUSION OF INCOMPETENT EVIDENCE.—Defend-
ant cannot complain that incompetent evidence offered by him
was excluded by the court on its own motion, though the prose-
cuting attorney offered no objection to it.

Appeal from Pope Circuit Court; *A. B. Priddy,*
Judge; affirmed.

*Hays, Ward & Hays,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and
*W. T. Hammock,* Assistants, for appellee.

HUMPHREYS, J.   Appellant was indicted in the Pope
Circuit Court for murder in the first degree by shooting
and killing Hiram Golden with a shotgun, in said county,
on the 8th day of December, 1921.   He was tried upon
said charge at the April term, 1922, of said court and
found guilty of murder in the second degree.   His punish-
ment was fixed at imprisonment in the State Penitentiary
for a period of ten years.

From the judgment of conviction this appeal has
been duly prosecuted to this court. ·

The body of Hiram Golden was found by Richard
Faucette on the morning of the 9th of December, 1921,
near the roadside, about a mile south of Atkins.   It was
lying partly in the branch, with the face downward.   The
shotgun wound was in the back of the head.   A 12-
gauge shell "Peters Referee" was found by J. F. Spear
in the road, twelve or fifteen feet from where the body
was lying.   Several days after the body was discovered,
Dallas and Dual Reel and Eliott Howard reported that
on their way to town they had observed a gun lying in
the field near the scene of the tragedy.   J. F. Spear went
down there and found a twelve-gauge single-barrel shot-
gun, which had apparently been thrown over in Lafay-
ette Younger's field and was lying about fifty yards from

where the body was found. The top side of the gun was rusty on account of exposure to the weather. On the examining trial of appellant it was admitted the gun belonged to him. Three other "Peters Referee" shells were found by the officers near the road, between the place where deceased was killed and Atkins. On the night deceased was killed, Oscar McLaren saw two men, between eight and eight-thirty o'clock, going toward Atkins, at the foot of the hill near the place where the Morrilton road turns off. The deceased had been in business with appellant and was indebted to him more than the sum of $1,000. In order to protect appellant, he carried a policy in his favor for $1,000. A short time before deceased was killed he made an application for a $10,000 policy in which appellant was the beneficiary. The State introduced testimony tending to show that appellant knew of this fact and inquired, over the 'phone, of the brother of the insurance agent, a few days before the murder, whether the policy had been received, who informed appellant that he thought it had, but would have the agent call him when he came in. The agent did not call appellant. The policy was never issued nor delivered, and was not effective until delivered.

Alta Curtis was the principal witness for the State. He lived on appellant's place near Atkins and looked after his stock. He was an accessory after the fact, and was therefore an accomplice, having admitted that he attempted to shield appellant by making false and misleading statements to the officers and others investigating the murder, and by swearing falsely in the examining trial. He testified in the examining trial, in substance, that Hiram Golden borrowed appellant's single-barrel shotgun and some shells, and left appellant's home on the afternoon of December 8th; that witness, Golden, appellant, and himself had been drinking; that witness remained with appellant and spent the night in his home; that he and appellant occupied the same room; that appellant did not leave the house during the night. He

testified in the trial of this cause, in substance, to the effect that Hiram Golden came to the house of appellant during the afternoon of December 8, 1921, about two o'clock; that when he knocked at the door appellant asked him to come in; that Golden said he did not have time; that he came to tell him he thought the insurance papers had come; that appellant went out on the porch and talked to him awhile; that afterwards Golden came in and the three of them began drinking; that Golden and appellant became intoxicated and went to bed; that later they got up and drank some more; that Golden remained until after supper, at the request of appellant, for the purpose of going down below town to get some more whiskey; that after supper the three of them left together to get the whiskey; that appellant took his single-barrel shotgun and some "Peters Referee" shells with him; that they went about a mile south of town to the place where Golden was killed; that they stopped about fifty yards before they reached the place, and sat down to rest; that while sitting there Golden took the hiccoughs; that witness told him if he would get a drink of water it would stop it; that they went to the branch near the roadside to get a drink, and while Golden was stooping over to drink, appellant shot him; that witness turned and ran back toward town, and when he had gone about seventy-five yards, appellant overtook him; that appellant had disposed of his gun; that they walked up the road about three hundred yards toward town, at which point appellant took a handful of shells out of his pocket and pitched them over on the right-hand side of the road; that afterwards they walked on towards Atkins and met a man near the point where the Morrilton road turned off; that they returned to appellant's house in Atkins and went to bed in the west room, occupying separate beds; that after they had retired, appellant got in bed with witness and asked him to say nothing about the killing and he would give him $500; that appellant rolled and tumbled all night, and remained in bed most of

the time next day; that next morning some one 'phoned to the house that Golden had been killed; that witness remained at appellant's home and in town until Saturday afternoon, when he returned to his own home; that he did not see appellant any more during the next week; that appellant came to see him, and told him what to. swear at the examining trial.

The court submitted the issue of whether or not Alta Curtis was an accomplice under the following instruction: "Our statute defines an accessory after the fact as follows: An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime. And the court charges you that an accessory after the fact is an accomplice within the provisions of the statute which provide that 'a conviction cannot be had in any case of felony upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.' So, if you find from the evidence in this case that the witness, Alta Curtis, is an accomplice under the above instructions, then you could not find the defendant, Joe Cheek, guilty upon his testimony, unless you should find that the said Alta Curtis is corroborated by other evidence tending to connect Joe Cheek with the killing, and such corroboration is not sufficient if it merely shows that Hiram Golden was killed and the circumstances thereof."

Appellant insists upon a reversal of the judgment because the court submitted that issue to the jury instead of instructing them that Alta Curtis was an accessory after the fact, according to his own admissions, and therefore an accomplice. Appellant requested two instructions, in substance, to the same effect as the instruction given by the court which is set out above. Both

requests were refused because fully covered by the court's instruction. Both requests left it to the jury to say, from the evidence, whether Curtis was an accomplice. Appellant did not ask the court in either instruction, or in any other, to declare that Curtis was an accomplice under the undisputed facts in the case. Having asked the submission of this issue to the jury, appellant is not in a position to complain of the court's action in submitting such issue upon his own motion.

Appellant's next contention for reversal is that there was not sufficient testimony, independent of the testimony of the accomplice, to connect the defendant with the commission of the offense. Corroborating evidence to that of an accomplice is sufficient if independent and tending to connect the defendant with the commission of the crime. The law does not require it to be sufficiently strong within itself to support a conviction. In the instant case the record reflects that appellant's shotgun was found near the scene of the tragedy. A shell of the size and make used by appellant for his gun was found in the road a short distance from where the body was found. Three other shells were found by the officers at the place where the accomplice said appellant threw them. Oscar McLaren testified that he met two men going toward Atkins at the place in the road where the accomplice said he and appellant met a man when returning to town after appellant shot the deceased. As tending to establish a motive for the killing, the State introduced independent evidence tending to show that appellant was the beneficiary in the insurance policy carried by the deceased and in another for which deceased had applied. We think the discovery of the gun and shells, the position of the body and the location of the wound, as well as the circumstance of meeting the two men in the road shortly after the killing, and the insurance transactions, were testimony independent of that of the accomplice, tending to connect appellant with the crime.

Appellant's last contention for reversal is that the court erred in excluding, on its own motion, the testimony of appellant's wife tending to establish an alibi for him. The testimony was clearly incompetent. A defendant cannot complain when incompetent evidence offered by him is excluded, even though the prosecuting attorney made no objection thereto.

No error appearing, the judgment is affirmed.