### SHERMAN STOGSDILL v. STATE.

No. A-3942.    Opinion Filed July 23, 1923.
(216 Pac. 681.)

(Syllabus.)

**Homicide—Evidence—Explanatory Circumstances and Declarations Connected with Commission of Crime.** Explanatory circumstances and declarations connected with the commission of a homicide, which have a tendency to shed light on the motives of the parties, are admissible in evidence, including antecedent declarations made by the deceased and those acting in concert with him, where they form some link in the chain of circumstances explanatory of their motives or other vital issues involved.

(a) Such testimony may also be pertinent in mitigation or aggravation of punishment.

Appeal from District Court, Delaware County; A. C. Brewster, Judge.

Sherman Stogsdill was convicted of manslaughter in the first degree, and he appeals. Modified and affirmed.

Hunt & Beauchamp and Preston S. Davis, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Sherman Stogsdill, plaintiff in error, in this opinion referred to as the defendant, was charged by information filed January 28, 1920, with the murder of Tom Sixkiller on October 1, 1919. By a verdict of the jury rendered October 29, 1920, he was found guilty of manslaughter in the first degree, without assessing the penalty. On November 11, 1920, the court rendered judgment upon the verdict, fixing the punishment at confinement in the penitentiary for a term of 25 years. From the judgment so rendered defendant appeals.

The evidence on the part of the state is to the effect that the defendant was a young man 23 years of age, and resided a few miles northwest of the town of Jay, with his wife and child; and that James Morgan, with his family, had moved into the defendant's residence with him on the 1st day of October, 1919, the day the homicide was committed; that the deceased, Tom Sixkiller, was a young man residing in that community ,and that some time during that day he had arranged for a car to take Mrs. Bess Hayes to Southwest City, Mo., that night; that Tom Sixkiller, in company with Bess Hayes, drove to the premises of the defendant in this car for the purpose of getting Lucy Wicketts, a sister-in-law of the defendant, and about the age of 18 or 19 years, who was temporarily residing with the defendant, to accompany them on this trip; that they drove up in front of the defendant's home so as to throw the lights of the car directly upon the porch, disclosing there members of the Morgan family, the defendant's family, and Lucy Wicketts; that the car was stopped a short distance from the front door with the lights burning and the engine running; that Lucy Wicketts came out to the car, where she was invited to go with the occupants of the car to Southwest City, and that she agreed to go, but stated that she would have to have a little time to get ready; that Lucy returned to the house, and in the meantime the wife of the defendant came out to

the car and informed Tom Sixkiller and Bess Hayes that the defendant was mad, and advised them to leave at once; that presently they noticed the defendant coming out of the house with a Winchester rifle, and that Sixkiller immediately started his car to drive away, but had to back up a short distance in order to turn around; that all this time defendant was approaching with his rifle; that Bess Hayes jumped out of the car, and Sixkiller continued driving away; that Lucy Wicketts and the wife of the defendant, the sister of Lucy, tried to intercept the defendant, but that the defendant passed on outside the fence a short distance from the door and fired a shot at the car, and when the car failed to stop he fired a second shot, after which the car stopped; that Bess Hayes then came up to where the car was, and found Tom Sixkiller, the driver, wounded by a gunshot, and covered with blood; that Mr. Morgan came up about that time, and after some little consultation Tom Sixkiller was placed in the back seat of the car, and Morgan drove the car to the home of the deceased. In going there they passed the home of Bess Hayes, where she left the party. As a result of this wound Tom Sixkiller expired a few hours later.

The testimony on the part of the state disclosed no previous difficulty between the parties, and no conversation or dispute between them at the time of the tragedy. The state's evidence disclosed no motive, except, as stated by defendant's wife, that defendant was mad.

The testimony of Bess Hayes was to the effect that they had driven to a number of other places before going to defendant's home on the night of the homicide.

In the testimony of the defendant and his witnesses it was shown, or attempted to be shown, that Tom Sixkiller and Mose Hines were together during the afternoon of October 1st, bal-

ing straw at the place of a man named Francis; that they there planned to go to a dance that night, and that, after quitting work, they drove away together from Tom Sixkiller's home about dark, stating that they were going to Coose Johnson's; that Tom Sixkiller, Bess Hayes, and Mose Hines together went to a certain place and made inquiry for a woman by the name of Doneghy, and afterwards drove on to the home of the defendant; that as they approached the house they found the defendant had retired for the night, and was lying on a mattress on the front porch; that they stopped the car, but that the engine continued to run, making considerable noise, and that nobody said anything, and no one got out of the car; that they waited there for a few minutes, and then Jim Morgan, who was a brother-in-law of the defendant, left the porch and went out to the car to ascertain what they wanted; that Morgan's little boy was with him, and that he went back to the house, and said that Tom wanted to see Aunt Lucy (Lucy Wicketts); that Lucy then went out to the car, and a moment later Reene Stogsdill, wife of the defendant, also went out to the car; that one of the three occupants of the car informed Mrs. Stogsdill and Lucy that they were going to a dance, and wanted Lucy to go with them; that Mrs. Stogsdill requested them to go away, stating that her husband did not want them there; that Tom Sixkiller replied, "Oh, h—! Bill (the defendant) won't do anything;" that after Mrs. Stogsdill and her sister had returned to the house the car moved off a short distance, and stopped near the corner of the lot; that after it stopped a shot was fired out of the car in the direction of the house, whereupon the defendant reached inside the door, picked up his gun, and fired from off his porch in the direction of the car, under a claim of justification in the defense of himself and members of his family; that only two shots were fired, one from the car towards the house and the other

by the defendant towards the car; that neighbors living near the home of the defendant heard two shots fired, and only two; that after Sixkiller was mortally wounded and taken to his home two witnesses found a .38 Colt's pistol, which they took from the car and hid in some rubbish until the following morning, and that this pistol contained one empty chamber and one cartridge which had been snapped but had not exploded. The evidence further disclosed that a short time prior to the killing the defendant had had a fist fight with Tom Sixkiller in the town of Jay, when the deceased had told the defendant that if he fooled with him any more he was going to kill him, and that the defendant warned the deceased to stay away from his home and stay away from his sister-in-law, Lucy Wicketts.

On cross-examination of Bess Hayes the defendant sought to show that this hostile feeling between the deceased and the defendant grew out of the fact that Sixkiller, Bess Hayes, and a man by the name of Enloe had shortly prior to that time taken Lucy Wicketts to a place in Yellow Bird Hollow for immoral purposes. This offer was by the court refused. The defendant, on further cross-examination of Bess Hayes, sought to show that Tom Sixkiller and Mose Hines took Lucy Wicketts to a dance on Downing Creek one night, where they were instrumental in getting her drunk. The court refused to permit the witness to answer these interrogations.

The testimony of the defendant himself is to the effect that when the car was driven up close to the house in such manner as to throw the light upon the porch, and after it had remained there for some little time, he told his wife to go out there and tell the persons in the car to leave; that at that time he did not know who the occupants of the car were, except that he could see that there were two men and one woman; that his wife came back and informed him who they were, and

later Lucy Wicketts came to the porch, and said she believed she would go with them; that the car moved to a place about 30 or 40 yards from the house, where it stopped, and some one in the car fired towards the house; that he then reached inside the door and got his Winchester and fired one shot at the car.

The jury in this case was selected without either side exercising any challenges. The defendant excepted to three of the instructions given, instructions numbered 9, 14, and 19. The alleged errors complained of in the petition in error may be grouped under two heads:

(1) That the court erred in excluding competent testimony on behalf of the defendant.

(2) That the court erred in giving instructions numbered 9, 14, and 19.

Without setting out in detail the language of the instructions complained of, we find upon a careful examination of these and the other instructions given that the charges to the jury, separately and as a whole, were fair to the defendant. The only other question remaining to be considered is whether the court erred in excluding the testimony we are about to analyze.

It will be observed that the evidence on the part of the state disclosed no motive for the homicide. The defendant, in a number of ways, and at various stages of the trial, sought to show that Tom Sixkiller and his companions were in a conspiracy to corrupt the virtue and good character of Lucy Wicketts, the sister-in-law of the defendant, then temporarily residing with him. If it could have been shown that these three persons were of bad moral character, and that their common purpose was to debauch and entice this girl into evil prac-

tices, it seems reasonable that such facts, if properly elicited, would shed light upon the motives surrounding the homicide, and should go to the jury in order that they might determine the state of mind and underlying motives of the defendant at the time of the killing. It has been held in many cases that evidence of previous difficulties between the defendant and the person killed, and the facts and circumstances explanatory of the ill-feeling or other cause of such difficulties, are admissible. There must, of course, be some link of association between the facts sought to be proved and the immediate facts surrounding the killing to give color of cause and effect to the transactions sought to be proved. 30 C. J. ''Homicide,'' § 407, notes and cases cited.

It is earnestly contended by counsel for defendant that the court foreclosed the defendant's right to show that there was no intention on the part of Tom Sixkiller, Bess Hayes, and Mose Hines to go to Southwest City, but that, on the contrary, it was their intention to attend a dance; also, that they were prevented from showing the bad character of the deceased and the other parties with him, and their purpose in going to the home of the defendant.

Defendant sought to show by the witness Larkin Hopkins that he was assisting Sixkiller and Hines in baling straw that afternoon, and that these two told him that they were going to a dance that night, and invited him to go with them. This testimony was sought to be introduced as a circumstance tending to show that Hines was in the car, as indicated by other testimony. The court excluded the proffered testimony as being immaterial.

J. R. Harper testified that he had been city marshal of the town of Grove, near where Bess Hayes lived; when he was asked if he knew the reputation of Bess Hayes for being a mor-

al, upright, and virtuous woman, the court refused to permit him to answer. The defendant then offered to prove by this witness that such reputation was bad.

The defendant offered to prove by Hubert Link that on the night of the killing, while Sixkiller was in the car with Mose Hines, Sixkiller told witness that they were going to Coose Johnson's, and, when witness asked him what for, he said "To coose a little." This proffered testimony the court likewise rejected.

Defendant offered to show by witness Susie Caudle that on the night of the homicide Sixkiller and Hines called at her place for a woman named Mame Doneghy, and that one of them stated to the Doneghy woman, in the presence of the witness, that they were going over to the defendant's house and get Lucy Wicketts to go with them. This offer the court refused. The court also refused to permit Bess Hayes, on cross-examination, to testify as to whether she was not a married woman, living with her husband, refused to permit her to answer whether Mose Hines was not a married man, and further refused to let her answer as to whether the deceased, the witness, and others, on a former occasion, a short time previous, were not instrumental in taking Lucy Wicketts to a disreputable dance, where they induced her to get drunk. The court held that such interrogatories were not proper cross-examination, and that such evidence was inadmissible, either as grounds for impeachment or otherwise. All the matters so excluded tended to corroborate the claim of the defendant that these were disreputable people, who were then conniving to entice Lucy Wicketts away from her home to participate in another moral debauch, and that this evidence was competent to go to the jury for whatever it was worth. It may be that Bess Hayes was as chaste as snow, that Mose Hines was a man of irre-

proachable character, and that the claim of the defendant that they were not of good repute, and had evil designs upon his sister-in-law, was without foundation. That, however, would not affect the relevancy of the testimony. We think these were proper matters for the consideration of the jury, to aid them in determining whether the defendant was justified in shooting as he did, and, if not, to aid them in deciding whether the shot was fired maliciously, with intent to kill.

This testimony might further have been considered by the jury in mitigation of punishment, and, if the excluded testimony, or some of it, had been submitted to the jury, the jury might have been able to agree upon the penalty to be inflicted, and might have assessed a lighter penalty than the 25 years' imprisonment assessed by the court. The testimony of the defendant himself indicates that he was at least guilty of manslaughter in the first degree. If his testimony is to be believed, the defendant fired the fatal shot after the deceased had fired one shot, at a time when the deceased was making no attempt, either real or apparent, to renew the difficulty. Under the circumstances, however, the defendant had no means of knowing but that the attack might momentarily be renewed.

For the reasons stated, the judgment of the trial court will be modified, assessing the punishment at 15 years in the penitentiary, and as so modified is affirmed.

DOYLE, J., concurs.

MATSON, P. J., absent, and not participating.