FRANK FORD PETERSON v. STATE.

No. A-10971. April 7, 1948.

(192 P. 2d 286.)

H. M. Redwine, David A. Kline, and Garland H. Hope, all of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, P. J.  Defendant, Frank Ford Peterson, was charged by indictment in the district court of Oklahoma county with the crime of murder; was tried, convicted of manslaughter in the first degree and sentenced by the court to serve a term of seven years in the State Penitentiary, and has appealed.

The first assignment of error is that the evidence was insufficient to sustain the judgment and sentence, and

that the court erred in refusing to sustain a demurrer to the evidence. This necessitates a brief statement of the evidence.

Defendant was charged with killing James Brown in Oklahoma City on May 18, 1947, "by beating the said James Brown on and about the head and body with a certain piece of 2-inch board, approximately 4 inches wide and 6 feet long," inflicting mortal· wounds which caused the instant death of the said James Brown. All of the parties involved were members of the Negro race, and lived in Oklahoma City.

Defendant, 47 years of age, resided with his wife, who was 27 years old, in half of a duplex, located at 1112 South Harvey, near southwest Eleventh street, in Oklahoma City. They had six children, from three months to seven years of age. On the night of May 17, 1947, defendant's wife left their home with his consent, and the understanding that she would return by 12 o'clock. She soon met up with James Brown, with whom the evidence revealed she had been keeping company for a period of two years. Together they visited several "night spots," drinking beer, and about 3:00 o'clock in the morning went to a hotel and entered a room therein. The wife of defendant, according to her testimony, left the room about 4:30 in the morning, and went to the home of a friend, Mamie Holland, being afraid to go home at that hour. Prior to her arrival there, and about 4 o'clock that morning, her husband, the defendant, had gone to this place to borrow money for the purpose of buying milk for the baby. He did not get any money and returned to his home, but later went back, and found his wife there, and they returned to their home together, between 6 and 7 o'clock in the morning. Some time around 9 o'clock James Brown appeared at the home of the defend-

ant and was admitted. Some conversation took place, and he left, but returned about 10 or 10:30 that morning. The defendant and his wife engaged in a quarrel, and James Brown and the defendant had a fight in the house. Defendant went out the door, and was standing on the outside, inviting Brown to come out of the house, and stating, as testified by a disinterested witness, Robert Lee Bradford, "Come on out, I am going to kill you." He at that time had the board above described in his hand. Brown came out of the door with a broom in his hands, and was running from the defendant. When he had gone some 20 to 25 feet from the defendant, he fell, and before he was able to get up, the defendant struck him with the board. He was struck on the head and body five times. From the results of these blows he died.

The witness Bradford was an eyewitness to the killing, and was a very fair and impartial witness. He lived on the other side of the duplex occupied by the defendant. His testimony was fully corroborated by Robert E. Lee, who was an eyewitness to the killing. Both of these witnesses testified that deceased was struck by the defendant while he was trying to get up, after falling, and that after striking him a number of times, defendant turned and walked away. He was arrested soon thereafter by the police officers, who were called to investigate the difficulty.

A written statement was made by the defendant to the officers, and the same was admitted in evidence, without objection. It is unnecessary to quote or refer to it. Under the defendant's own statement, as well as the testimony of his wife who testified in his behalf, he was at least guilty of manslaughter in the first degree. It is unnecessary to further review the evidence. It was amply sufficient to sustain the judgment and sentence, and the

court did not err in refusing to sustain a demurrer to the evidence.

Defendant's second assignment of error is the refusal of the court to give certain requested instructions.

We have carefully examined these instructions, and it is unnecessary to quote them. In our opinion they were not "correct statements of the law." A careful consideration of the instructions given by the court reveals that they were correct as shown by the facts in this case. The law of self-defense was given by the court to the jury, and his rights were properly protected by the instructions of the court.

Defendant's third assignment of error is that the court erred in giving an additional instruction to the jury when they returned to the courtroom after having retired to consider their verdict. This instruction was after a request by the jury as to an interpretation by the court of the term "aggressor." The court was very careful in his remarks to the jury, but after a second request, gave a written instruction, numbered 12A, which defined this term more fully.

In the case of Smith v. State, 19 Okla. Cr. 14, 197 P. 514, 516, an instruction almost identical with the one given by this court was approved by this court. There the court said:

"Conceding that the deceased brought on the difficulty by striking the defendant with a wrench, if the deceased in good faith thereafter withdrew from the difficulty and fled from the defendant, and the defendant pursued, overtook, and inflicted upon the deceased the fatal knife wound, and at the time said fatal wound was inflicted the defendant was in no danger, either real or apparent, of death or great bodily harm, at the hands of

the deceased, he certainly could not successfully invoke the doctrine of self-defense. The law of self-defense is a rule of necessity, and can only be invoked in the justification of a homicide in order to prevent an actual or reasonably apparent infliction of death or great bodily harm upon the slayer, and the necessity must be imminent at the time of the killing and not prior thereto. Marshall v. State, 11 Okla. Cr. 52, 142 P. 1046.

"If the deceased abandoned the difficulty in good faith and fled, and the defendant pursued, overtook, and inflicted upon him a fatal wound, the defendant became the aggressor, and could not successfully plead self-defense. Smith v. State, 14 Okla. Cr. 250, 174 P. 1107.

" 'Where the assailant retreats in good faith, and the assaulted person pursues and kills him with a deadly weapon, the killing cannot be justified as in self-defense.' Gransden v. State, 12 Okla. Cr. 417, 158 P. 157."

The trial court did not err in giving instruction No. 12A.

The last assignment of error is with reference to the alleged misconduct of a juror.

On the hearing of the motion for new trial, the defendant testified to hearing a conversation between three of the jurors, during a recess of the court at the time of the trial. The evidence revealed that he told his counsel of this conversation prior to the submission of the case to the jury, and that the matter was not mentioned to the trial court. Counsel for defendant testified that when the defendant reported this incident to him, he stated to defendant, "Well, let it go. I guess that is all right." Under the above statement, we do not consider there was error in overruling the motion for a new trial.

In the case of Arms v. State, 49 Okla. Cr. 34, 292 P. 76, 77, it is said:

"Where misconduct of a juror comes to the knowledge of counsel during the progress of the trial and such fact is withheld and no objection made until after the verdict, such misconduct, unless it constitutes fundamental error, is waived."

For the reasons herein stated, the judgment of the district court of Oklahoma county is affirmed.

JONES and BRETT, JJ., concur.