Jack DODSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12143.

Criminal Court of Appeals of Oklahoma.

May 18, 1955.

438

Wilkerson & Wilkerson, Pryor, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, Jack Dodson, defendant below, was charged by information, in the District Court of Mayes County, Oklahoma, with the crime of murdering one Tommy (Corky) Walton, allegedly committed on December 25, 1953, in said County and State, in violation of T. 21, § 701, O.S.1951. He was tried by a jury, convicted of manslaughter in the first de-

gree, but the jury being unable to agree on the punishment, left that matter to the Trial Judge, under the provisions of T. 22, § 927 O.S.1951. The Trial Judge fixed the defendant's punishment at 7 years in the penitentiary, and entered judgment and sentence accordingly, from which this appeal has been perfected.

The evidence, as reflected from the 417 page case-made, briefly discloses that the defendant and the decedent were about the same age; the decedent, Corky Walton, was the defendant's uncle, twenty-three years of age, while the defendant, the decedent's nephew, was twenty-two years of age. It appears from the record that prior to the occasion in question, they had been the best of friendly relatives, almost like brothers. In cross-examination, the defendant admitted before the altercation he had been to Salina on the night of December 24, 1953, with his wife, to a dance, where he admitted purchasing a pint of whiskey and had two drinks, one of moonshine whiskey, and one drink of green label whiskey. At the trial, the Trial Judge permitted no evidence to be introduced to show the circumstances which led up to the difficulty. The State was only permitted to establish by its proof that the defendant was seated in the Spot Cafe, in Pryor, Oklahoma, when the decedent, Corky Walton, came into the Cafe in a very bad frame of mind, and took off his tie, unbuttoned his shirt, and stated in substance, that he was going to "whip Hell out of him"; that finally the defendant, Jack Dodson, consented to go outside with the decedent, Corky Walton, where Corky Walton proceeded to administer a substantial beating to him, pulling his shirt up over his arms and head, with his right hand, and striking him numerous blows with his left fist. It appears from the State's evidence, that the defendant took his pocket knife and slashed and fatally stabbed the decedent, Corky Walton, with the pocket knife, just below the left nipple so that the blade of the knife pierced the heart, which resulted in the death of Corky Walton. The State's case further discloses, that as the defendant was leaving the scene of the fight, he was heard to remark "I guess this will teach them G— d— chicken —— not to —— with me." (The omitted words being too vile and obscene to set out in print.)

The defendant's testimony was, in substance, that while Walton was beating him, he observed an open pocket knife in Walton's right hand, and that he grabbed his arm and twisted his wrist in such a manner as to force him to drop the knife. He admitted that he picked the knife up and slashed the decedent, in an effort to free himself. (The State's case in rebuttal discloses that the decedent had only two knives; one of which was found in his fishing kit, and the other among his effects on a dresser at home after the killing.) The defendant testified he did not know he had inflicted any stab wounds, and he denied it was his intention to kill Corky Walton. He further testified that he only resorted to the use of the knife because Corky Walton, during the fight, told him he was going to kill him. The defendant further testified that he had told Walton in the Cafe that "you are drunk, and we don't want to have any trouble, because we are kinfolks."

From the foregoing state of the record, with reference to the evidence admitted by the Trial Court, makes it appear that Walton came into the Cafe in an intoxicated condition and without warrant, or provocation, precipitated a fight by inviting the defendant outside so he could "whip Hell out of him", only because Walton was in a drunken condition. But in this connection, it appears the State offered to prove, and the Trial Court erroneously sustained an objection to the proof thereof, that the defendant and his wife returned about a quarter to 1:00 o'clock, A.M., on December 25, 1953, from the dance at Salina, to the home of Mrs. Tom Walton, the mother of the decedent, and grandmother of defendant. The record discloses that the State offered to prove that while the defendant was there, he became abusive with his wife, beating her, and knocked her down. Mrs. Edith Corn, an aunt of defendant, observing the conduct, announced she would

call the police, whereupon the defendant struck her on the head; attempted to jerk the telephone off the wall, knocking everything off the telephone table. At this point it appears, from the proffered evidence, his wife ran into another room, and Jack Dodson pursued her, where he knocked her down a second time. It further appears from the proffered testimony, each time he knocked her down, he kicked her. In the melee, it further appears he shoved Mrs. Walton into a stove. Finally, the defendant backed into a corner of the kitchen, with a knife in his hand, and there stated: "Now all of you nice sons-of-bitching people, just don't move; you can't get me into anything my Dad can't get me out of." Thereafter, he left in his car and went to the Spot Cafe downtown. This proffered testimony further discloses that the decedent, Corky Walton, was informed of the difficulty when he came to his mother's home and observed the disorder in the house, and what had been done to the occupants thereof. He left, and sought out the defendant.

■ We are of the opinion that the foregoing was erroneously excluded from the record. This evidence was admissible for the same reason the defense was permitted to show the prior friendly, and almost brotherly affection existing between the defendant, and the decedent. Furthermore, it was admissible, as explanatory of the decedent, Walton's conduct, his state of mind, and motives, and as explanatory of the defendant's state of mind, as to the decedent, and as to his motives, when he left the Spot Cafe to engage in mutual combat with the decedent, Corky Walton. In Starks v. State, 67 Okl.Cr. 156, 93 P.2d 50, 51, it was said:

"Explanatory circumstances and declarations connected with the commission of a homicide, which have a tendency to shed light on the motives of the parties, are admissible in evidence, including antecedent declarations made by the deceased and the defendant, where they form some link in the chain of circumstances, explanatory of their motives or other vital issues involved."

Stogsdill v. State, 24 Okl.Cr. 152, 216 P. 681, and Phelps v. State, 64 Okl.Cr. 240, 78 P.2d 1068, to the same effect. In Walker v. State, 54 Okl. 279, 19 P.2d 622, the foregoing rule was extended to acts and conduct of the defendant occurring, not only a short time prior to the homicide, but immediately thereafter. Therein, it was held, "Evidence of the actions, conduct, and general demeanor of defendant a short time prior to, and immediately after, the commission of the homicide is competent as tending to show the state of mind of defendant at the time of the killing." In the Walker case, in the body of the opinion, the evidence complained of is as follows:

"Under this assignment it is also contended the court erred in admitting certain testimony given by Alex Gosey and R. E. Richardson to the effect that an hour or two before the cutting of deceased by defendant, he was in the public road near where the fatal difficulty occurred; that he was armed with a knife; that he was drinking; and that he at that time attempted to cut a negro with this knife. Effie Miller testified that immediately after the homicide, defendant attempted to cut Jimmie Fixico with the same knife, chasing him some distance from the scene of the homicide.

"This evidence was all admissible as tending to show the state of mind of defendant at the time of the killing. Williams v. State, 4 Okl.Cr. 523, 524, 114 P. 1114; Hampton v. State, 7 Okl. Cr. 291, 123 P. 571, 40 L.R.A.,N.S., 43; Tallon v. State, 22 Okl.Cr. 89, 210 P. 309; Inman v. State, 22 Okl.Cr. 161, 210 P. 742."

If the Trial Court had not excluded the foregoing competent testimony, we have no doubt the defendant would have suffered greater punishment at the hands of the jury than he did from the Trial Court.

■ The defendant sought to clear himself herein on the plea of self-defense, but this record clearly reveals that the defendant engaged in mutual combat with the decedent, hence his plea of self-defense

was rendered devoid of merit. Green v. State, 54 Okl.Cr. 450, 23 P.2d 506. In Gross v. State, 50 Okl.Cr. 226, 297 P. 309, it was said:

"Where the killing is done in mutual combat, entered into willingly, and in the knowledge that it is liable to cause the death of one or the other of the combatants, the defendant cannot justify on the ground that it was committed in self-defense, and it will be manslaughter, at least, unless the defendant can prove that before the fatal blow was struck he had refused any further combat and had retreated as far as he could with safety, and that he killed his adversary of necessity to save his own life or his person from great bodily harm."

In Whitfield v. State, 45 Okl.Cr. 397, 283 P. 266, it was said:

"The right of self-defense is given to the citizen for his protection and cannot be pleaded as a defense by one who is himself the aggressor or who enters voluntarily into a difficulty armed with a deadly weapon, no matter in how much danger he may be placed or how imminent his peril may become."

There are many other cases to the foregoing effect; one of the strongest being Boutcher v. State, 4 Okl.Cr. 576, 111 P. 1006, 1007:

"When a defendant voluntarily enters into a mortal combat with the deceased, knowing, or having reason to believe, that it will or probably may result in death or serious bodily injury to himself or to the deceased, the defendant cannot claim that he acted in self-defense in taking the life of the deceased, it matters not to what extremity he may be reduced in the conflict, and such killing will be murder, unless before the fatal shot is fired he in good faith withdrew or attempted to withdraw from the combat, and either by word or act made that fact known to the deceased, and the latter thereafter continued to press him, and gave the defendant reasonable cause to believe that he was in danger of being killed or of receiving great bodily injury at the deceased's hands."

Moreover, under the provisions of T. 22, § 745, O.S.1951:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Saulsbury v. State, 83 Okl.Cr. 7, 172 P.2d 440. In light of the facts herein, and the foregoing authorities on mutual combat, the defendant failed to show circumstances of mitigation, or that were sufficient to justify or excuse the killing herein involved.

 The defendant's argument summarized in the case is that the evidence was insufficient to sustain the conviction; the worst that can be said of the evidence is that it is conflicting. We are of the opinion that the evidence in the record, admitted by the Trial Court for the consideration of the jury, exclusive of that erroneously excluded by the Trial Court, was sufficient to create a question of fact for the jury. Under such conditions, it has repeatedly been held, that where the evidence is conflicting, the sufficiency thereof presents a question for the determination of the jury; Wass v. State, Okl.Cr., 274 P.2d 412; Peterson v. State, 86 Okl.Cr. 302, 192 P.2d 286:

"In considering the sufficiency of the evidence, the function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis in evidence on which jury can reasonably conclude that accused is guilty, as charged."

██ We are of the opinion, that on the foregoing premise, the evidence was sufficient to sustain the verdict of the jury. Furthermore, we have no hesitancy in saying that, undoubtedly because of the able representation rendered by defense counsel,

the defendant was able to escape with such leniency.

For all of the above and foregoing reasons, the judgment and sentence herein imposed is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.