Mack WIDDOES, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12252.

Criminal Court of Appeals of Oklahoma.

Feb. 15, 1956.

Rehearing Denied May 16, 1956.

Cooper, Pitman & Lawrence, David Tant, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

**416**

BRETT, Judge.

The defendant, Mack Widdoes, was charged by information in the District Court of Grady County, Oklahoma, with the felonious offense of first degree rape of a female twelve years of age; tried by a jury; convicted, and sentenced to a term of twenty years in the state penitentiary from which conviction, judgment, and sentence, he appeals.

Briefly, the record herein discloses that on July 4, 1954, the defendant and his wife, residents of Grady County near Nelsonville, Oklahoma, were returning from a fishing trip at Tenkiller Lake and stopped at Del City, Oklahoma, to visit the Minter family, who had formerly been neighbors of the defendant when he resided there. Before leaving Del City, they prevailed upon Mr. and Mrs. K. A. Minter to permit their twelve year old daughter, Phyllis Ann Minter, to return home with them. Upon arrival at the defendant's home, everything was uneventful until the next day, July 5, shortly before noon, the defendant and Phyllis Ann went to Chickasha, ostensibly to buy meat and get his car washed. While in Chickasha, he did his shopping but was unable to get the car washed. They went to a drug store where he bought Phyllis Ann a coke and some comic books. Thereafter, they drove up and down the street observing the display posters in front of the moving picture theaters to determine what was showing. Thereafter, they began the return trip to his home. In going home, both the plaintiff and defendant testified, he deviated in his route. Instead of turning off the highway south of Chickasha to the west, he turned off to the east, several miles out of his way, finally stopping on a dirt road. Here, the plaintiff testified, the defendant stopped his automobile, came around to her side of the car, jerked her out of the automobile, and threw her on the ground. Against her wishes and despite her resistance and outcries to prevent it, he had intercourse with her. She testified that when he inserted, she felt great pain and had no recollection of what took place until after they had gone a considerable distance on the return trip to the defendant's home. She recalled later, that the defendant told her not to tell Mrs. Widdoes or they would get into trouble.

The defendant admits the devious route taken to his home and attempted to explain to the jury that instead of going south-west, he went south-east in an effort to find a fishing hole. Upon arriving home, Phyllis Ann complained to Mrs. Widdoes that she was menstruating. Her menstruation continued throughout the afternoon, increasing to such proportions that that night, Mrs. Widdoes took her to the hospital in Chickasha. The defendant accompanied Mrs. Widdoes and Phyllis Ann to the hospital.

Dr. Stoll, of the hospital staff, described the defendant as tense, nervous, and excited and being quite anxious to know what caused Phyllis Ann's bleeding. The Doctor was of the opinion the bleeding was excessive for menstruation and that Phyllis Ann seemed to be in a state of shock and uncommunicative. She would not explain to him what had happened.

Dr. Chatham, a gynecologist of Chickasha, examined Phyllis Ann on July 6, and found that there was a small hematoma at the vaginal introitus with a laceration of the hymen and the perineum. He related that her condition was highly emotional, bordering on hysteria. He testified that this flow of blood was from both arterial flow and menstrual flow and explained the difference in the two in that natural blood was of a brighter color than menstrual blood.

During the day of July 6, Phyllis Ann was moved to Oklahoma City and on the highway near Norman, Oklahoma, her mother stopped the automobile and made further inquiry as to what had caused the condition and she related that she was raped. Shortly thereafter, she was placed in the Polyclinic Hospital of Oklahoma City where she was examined by Dr. Cunningham on July 7. He did not examine her on July 6, he testified, because she had a torn hymen and he believed a good night of rest with a sedative was essential for a condition conducive to a proper examination. He related she was emotionally upset and

mentally disturbed. The next morning, he examined her private parts. The hymen was torn, there was hematoma on the edges, and in the vaginal tract was a clot of blood. The condition he found, he testified, was because of an expansive force being applied to the vagina, tearing the hymen and going into the vaginal canal, which could have been produced by a man's penis. He testified that while Phyllis Ann was in the hospital, she was uncommunicative and would hardly talk.

■ Where the evidence is conflicting, sufficiency thereof is entirely a question for the jury. Stuart v. State, Okl.Cr., 280 P.2d 755; Dodson v. State, Okl.Cr., 284 P.2d 437; Gardner v. State, Okl.Cr., 278 P.2d 249. Moreover, in considering the sufficiency of the evidence, the function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis in the evidence by which a jury could conclude that the accused is guilty as charged. Dodson v. State, supra. This evidence meets these requirements.

■ Next, the defendant complains of certain hearsay testimony of Sheriff Perrin, in which the sheriff testified concerning the location at which the crime was committed. It appears he was in the automobile with Phyllis Ann and she directed him where to drive to the point the assault was committed. He testified concerning the point of the crime being some 50 yards south of the corner as pointed out to him. We are of the opinion the sheriff's testimony is harmless, in view of the fact that (1) the victim positively fixed the place at that location, and (2) on cross-examination of the sheriff, by defendant's counsel, the point of the crime was again established as 50 yards south of the corner pointed out to him.

■ It has been held, in this connection, that when in light of the whole record, there is no reason to believe that the defendant was prejudiced by hearsay testimony, the same does not constitute grounds for reversible error. Jackson v. State, 77 Okl.Cr. 160, 140 P.2d 606, 612. As was said therein:

"Here the evidence is sufficient to sustain the conviction without this evidence, and there is no reason to believe he was prejudiced by reason thereof."

Such is the case at bar.

■ Finally, the defendant contends that the trial court erred in refusing to give his requested instruction No. 2, to the effect:

"That if you find and believe from the evidence that the prosecutrix did not immediately report this alleged assault upon herself, that you may consider her failure to make such complaint as evidence of the fact that she had not been assaulted."

This instruction is entirely erroneous in that it amounts to a comment on the weight of the evidence, and under the facts of this case would have been entirely improper. This instruction is obviously based upon the fact that Phyllis Ann, being in a state of shock, refused to make any statement to any one concerning what had happened until she had reached a point near Norman en route to Oklahoma City where she disclosed the facts to her mother. Here, the defendant is charged with the rape of a 12 year old child. The record reveals she was in such a state of shock that she had to be carried in and out of the hospital. Under such conditions, the defendant was not entitled to the requested instruction. It has been held where the female is under the age of consent, evidence of failure to make complaint is not relevant. State v. Haston, 64 Ariz. 72, 166 P.2d 141; 52 C.J. 1069, Note 12; 75 C.J.S., Rape, § 54, Note 42, p. 527; State v. Oswalt, 72 Kan. 84, 82 P. 586; People v. Reynolds, 48 Cal.App. 688, 192 P. 343. In People v. Jacobs, 16 Cal.App. 478, 117 P. 615, it was held:

"That prosecutrix in statutory rape made no complaint is not a circumstance defendant is entitled to have considered as showing improbability of the commission of the offense."

Affirmed.

JONES, P. J., and POWELL, J., concur.