Calvin J. MEGOWN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12287.

Criminal Court of Appeals of Oklahoma.

Aug. 1, 1956.

---

Appeal from the County Court of Okmulgee County; W. A. Barnett, Judge.

K. D. Bailey, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, Calvin J. MeGown, defendant below, was charged by information in the County Court of Okmulgee County, Oklahoma, with the offense of operating a motor vehicle while under the influence of intoxicating liquor, allegedly committed in said county on or about December 1, 1953. He was tried by a jury, convicted, and his punishment set at ten days imprisonment in the county jail and a fine of two hundred and fifty dollars. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

It appears that the information herein was filed on December 2, 1953, and that it was set for trial and stricken from two trial assignments upon the motion of the defendant, and came for trial on September 20, 1955.

The state offered in chief the testimony of five witnesses. Principal evidence, however, was given by Frank Grall, who on December 1, 1953, was a highway patrolman. He testified that he and his partner, Earl Glenn, were driving south on Highway 75, approaching Okmulgee, when, about 10:15 p. m., an automobile approaching from the south was observed weaving on the road about one-half mile north of the the city of Okmulgee. They turned around and proceeded to overtake the automobile. When they stopped the automobile, they found it was driven by Mr. Calvin J. MeGown, who the officers testified was in an intoxicated condition. On being informed, "You are too drunk to be driving this car," the defendant replied, "I know it." The highway patrolmen arrested the defendant and searched his automobile, finding a half-filled pint bottle of Old Crow whiskey on the seat by the defendant and in the glove compartment an empty J. W. Dant whiskey bottle. Patrolman Grall testified that he did not know who was driving the automobile until he observed Mr. MeGown, alone, seated in the automobile. He related that when Mr. MeGown got out of the automobile, he was unsteady on his feet, bleary eyed, and talked incoherently with a thick tongue. He said he never saw

him after he turned him over to the jailer. However, at the jail he picked up the telephone to call Red Blain to come and get the defendant's automobile and he overheard the defendant talking to the sheriff and heard him tell the sheriff, "I am drunker than hell, but I don't want to stay up here all night." On cross-examination, he testified that the defendant was weaving when he met him and the traffic was pretty heavy from the north because a basketball game at Preston had just ended. He testified this information was contained in his report he made two years before, that the report was made as a routine matter as prescribed by the rules and regulations of the Department of Public Safety. Patrolman Glenn corroborated Patrolman Grall.

There was other evidence to the effect the defendant had been drinking. Sheriff Holly testified that the defendant called him and said, "He was tighter than hell and he wanted to go home." This statement amounts to a confession of guilt, for if he was that much under the influence of liquor, he was clearly within the provisions of 47 O.S.1951 § 93. This corroborates Patrolman Grall as to over-hearing the statement.

The defendant testified that he went to Muskogee with a Mr. Polley to attend a cattle sale. They returned in the late afternoon to his ranch where they drove over the pasture. John Morrow, who ran the defendant's ranch, said when the defendant was there he did not smell intoxicants on his breath and the defendant appeared perfectly sober. They returned to the defendant's Chevrolet agency about 9:00 p. m. The defendant admitted they had probably a couple of drinks, consuming about one-half bottle of I. W. Harper whiskey, which he admitted was in his car. He denied knowing anything about the J. W. Dant whiskey, but he testified as to having the I. W. Harper bottle which was broken by the officers before the trial. The officers identified this as Old Crow whiskey. The brand, in light of the admission of the defendant that he had whiskey in a partially filled bottle, is immaterial.

After he and Mr. Polley took their drinks, they separated and he started driving north on Highway 75, as both he and the patrolmen testified, at a speed of about twenty-five miles per hour. He further testified that he and Patrolman Grall had had a difference concerning some directional lights for Grall's automobile; that Grall wanted a discount and he would not let him have it. He denied, on the cross-examination by the county attorney, making the statement to the sheriff that he "was tighter than hell."

Mr. Polley testified substantially the same as the defendant relative to their trip and stated that when he left the defendant at approximately 9:45 p. m., he did not think he was under the influence of intoxicating liquor. In this they were corroborated by defendant's witnesses, among them being a Pete Branson, a prisoner in the jail serving time for drunk driving. The defendant and Polley were also corroborated by the bookkeeper, Mrs. Theda Williams Cox, who testified to the defendant's coming into the garage about 8:30 or 9:00 p. m. where she had him sign some checks. He did not appear intoxicated to her. The checks were offered in evidence to show that he wrote in a good, steady hand.

Walter McGown came to the jail and drove his brother home in his car. He testified the defendant did not appear irrational, spoke clearly, did not stagger, and walked out of the jail without any help and got in the car. This was about midnight.

The foregoing evidence presents a conflict which was for the determination of the jury. It has been repeatedly held that the Criminal Court of Appeals will not interfere with the verdict even if there is a sharp conflict and different inferences may be drawn from the evidence, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479; Stuart v. State, Okl.Cr., 280 P.2d 755; Dodson v. State, Okl.Cr., 284 P.2d 437. It was therefore not error for the trial court to overrule the defendant's demurrer to the evidence.

■ The defendant complains that the trial court admitted evidence that was not properly identified. Patrolman Grall was permitted to testify relative to the J. W. Dant whiskey bottle found in the glove compartment and the same was marked for identification by Patrolman Glenn. Trooper Grall was there when the search was made and the whiskey found. Either patrolman could identify the bottle and we see no error in the admission of this evidence.

■ The defendant further complains that the county attorney was permitted to go outside the record in his argument to the jury when he stated the law should apply to everybody, the higher ups as well as the little man. We are of the opinion that this statement can be construed as nothing more or less than that the law is supposed to operate with even handed justice upon all alike, regardless of station, color, class, or creed. In any event, the defendant has not properly preserved the record herein, since the references complained of are only unexplained excerpts from remarks of counsel to the jury, which is not enough to challenge our attention. Passmore v. State, 87 Okl.Cr. 391, 198 P. 2d 439.

■ The defendant further urges that the trial court restricted the counsel for the defendant in his cross-examination of the prosecuting witnesses, Frank Grall, and the Sheriff of Okmulgee County, Ellis Holly. This complaint is based upon the proposition that the counsel for the defendant was not permitted to enter into an extensive cross-examination as to the reason for Frank Grall's resignation from the Highway Patrol. The question was asked if it were not recommended that he resign from the Highway Patrol. The answer was, "No, I resigned on my own." Whereupon, counsel for the defendant further asked, "I will ask you this, did you resign prior to being fired, not over this case but as a result * * *?" Mr. Boatman objected. The trial court sustained the county attorney's objection on the theory that this line of questioning was not an issue in the trial and did not tend to prove or disprove any of the facts in this case. Counsel contended that the matter to be inquired about involved the credibility of the witness. The right of cross-examining witnesses is the most valuable right given by law and it may be reversible error to deprive the defendant of this right. Spear v. State, 7 Okl.Cr. 379, 123 P. 852; Williams v. State, 92 Okl.Cr. 70, 220 P.2d 836. Mr. Grall's severance of connection with the Highway Patrol was not an issue in the case, but the answer to this inquiry might have developed such bias and prejudice as to affect the witness' credibility. In this connection, defendant urges that if he had been permitted to cross-examine Mr. Grall, it would have revealed some dispute relative to financing a new car purchase. The defendant was not deprived of his right to cross-examine, entirely. Nevertheless, it was improper for the trial court to limit the examination in this regard. However, it appears this point may be exaggerated since on direct evidence Mr. McGown testified to the effect that when he refused to sell to Mr. Grall some directional lights for his private automobile, "He said it would be better if I would give him a discount." No mention was made in McGown's testimony concerning financing a new car purchase. Under these conditions we are of the opinion that while, in this case, it was error to limit the cross-examination, it was not reversible error.

■ It is further urged that the court erred in sustaining objection to questions propounded by the counsel for the defendant in the examination of witnesses when the county attorney failed to voice any objection to questions so propounded. It has been held that the trial court may exclude evidence on its own motion and in the absence of clear abuse of discretion does not constitute reversible error. People v. Deacon, 117 Cal.App.2d 206, 255 P.2d 98. In 23 C.J.S., Criminal Law, § 1079, note 99, p. 517, it is said that it is the function of the

court to seek to confine the evidence to strictly legal lines and it may and sometimes should, ex mero motu. People v. Watrous, 7 Cal.App.2d 7, 45 P.2d 380; Cheek v. State, 155 Ark. 500, 244 S.W. 705, and other cases. This record does not reveal the trial court abused its discretion in this regard. This objection was predicated upon the proposition that in one instance counsel for the defendant sought to read matter from Patrolman Grall's official report without the same being introduced into evidence. To have permitted such to be done would have violated the fundamental rule as to the report being the best evidence of what it contained.

█ In this connection, it is further urged that the trial court erred in that on its own motion it did not permit Sheriff Holly to answer, on cross-examination, the question, "Then you were pretty well satisfied, weren't you, that he wasn't intoxicated or drunk even though he had been drinking?" Sheriff Holly had testified theretofore that the defendant had told him he was "tighter than hell" and it was his opinion that he had a drink or two, and that he was not going to say he was drunk or sober because he did not see him. It is apparent that this was an attempt on the part of the cross-examiner to put words in the sheriff's mouth by enlargement of his prior testimony and was argumentative. We cannot say the trial court abused its discretion in this instance.

█ Further, in this connection, it is urged that the trial court erred in excluding the direct examination of the defendant to the effect that his Chevrolet franchise provides for "revocation upon conviction of a crime involving moral turpitude." It is fundamental that the civil relations existing between the Chevrolet Motor Company and the defendant herein, and the effect a conviction would have upon those relations is immaterial. Of like nature is the matter of whether or not Mr. Bailey, defense counsel, helped Charley Steele in his campaign. We presume this related to a political campaign involving possibly the office of county attorney.

█ Counsel for the defendant urges that regardless of the admissibility of the information sought to be elicited, the effect of these assistances by the court tended to leave the implication with the jury that the judge was interested in the prosecution. This record shows that the county attorney was certainly not as aggressive as he might have been in relation to this mass of immaterial matter. Eight different times the trial court intervened in such regard. They may have made it appear the trial judge was too interested in the prosecution. Still, it was certainly his duty to be interested to the point of seeing that the examination of the witnesses in relation to both direct and cross-examination did not exceed the bounds of legal propriety, whether or not objection was interposed by counsel. We are of the opinion the trial judge did not abuse his discretion in this regard.

█ Nevertheless, the trial court, of course, should conduct the trial with fairness to both the state and the defendant. He should refrain from making statements which would in any way indicate his bias or prejudice. Jackson v. State, 67 Okl.Cr. 422, 94 P.2d 851. It is urged that at one time when defense counsel was interrogating the defendant relative to whether certain checks were dated back, the trial court said, "I would like to know what difference that makes." We are of the opinion that these interventions by the trial court did not prejudice the defendant on the issue of guilt, but they may have prejudiced the defendant with the jury as to the imposition of sentence. It has been said:

"Trial courts should not in any manner, either through their actions or words, indicate to the jury their opinion upon the merits of the case being tried before them. Repeated interrogation of the witnesses by the trial court, which tends to indicate his opinion as to the guilt of the defendant,

will constitute error. 'Whether such conduct is reversible error depends upon all of the facts and circumstances in the case." Little v. State, 72 Okl.Cr. 273, 115 P.2d 266.

■ The defendant further objected to the trial court instructing the jury that the several continuances were at the request of the defendant. This was a procedural matter of no concern of the jury and was prejudicial to the defendant.

■ The defendant complains the trial court erred in not giving his instruction No. 4, relative to intoxicating liquor containing not more than 3.2% of alcohol measured by weight, defined as non-intoxicating. This certainly was not error, since there was no evidence to support the giving of the same. Therefore, failure to give the same was not prejudicial to the rights of the defendant.

Furthermore, we are unable to see how it was error for the trial court to refuse to instruct on the question of excessive speed, since the evidence does not show the defendant was driving at an excessive speed. By the same token, it was not error to refuse defendant's instruction on reckless driving since the question involved, as suggested by the attorney general, was not reckless driving but drunken driving. The court's instructions were in substantial compliance with the law. Other errors are urged to which we attach no merit.

■ Nevertheless, this offense was committed on December 1, 1953, when there was no mandatory minimum penalty, which became effective on May 16, 1955, by amendment to 47 O.S.1951 § 93. The trial of this case was commenced on September 20, 1955, when wide publicity had been given the mandatory minimum penalty of not less than ten days in jail for drunken driving. It is urged the jury was under the impression that the ten days minimum sentence was mandatory and hence the verdict to that effect. It may be that the jury was convinced a minimum jail sentence in conformity with the amended law was mandatory, otherwise no jail sentence

would have been imposed. Then too, we cannot overlook the effect of the trial court's numerous interventions into the examination of the witnesses, which may have affected the jury's assessment of penalty. Therefore, looking at the record as a whole, we are of the opinion that the judgment and sentence should be and the same is hereby modified, 22 O.S.1951 § 1068, to the fine of $250, and as modified is affirmed.

POWELL, J., concurs.

JONES, P. J., not participating.